ROGERS, Justice.
 

 Oakley B. Harris died in New Orleans, his domicile, on March 11, 1928, leaving an estate consisting of property in Louisiana and Alabama. The property in Louisiana was appraised as of the date of his deáth at $426,-533.27 and the property in Alabama was valued at $30,006. The deceased was survived by his mother, Mrs. Susie Jackson Harris, a resident of Lawrence county, Ala., five brothers and sisters, and two nephews, issue of a predeceased sister.
 

 Under his nuncupative will by public act executed on February 26, 1926, after making three particular legacies (one of which has been renounced), the testator directed that the residue of his estate be converted into cash and divided into ten equal shares to be distributed one share to each of his ten nieces and nephews. The testator made no provision whatsoever for his mother, notwithstanding she was a forced heir to the extent of one-fourth of his estate. The will was duly recognized and ordered probated, and the Hibernia Bank & Trust Company, in accordance with its terms, qualified as executor and proceeded to administer the succession.
 

 On his deathbed, the decedent attempted to make another will, leaving to Miss Jessie McBride $50,000, to Mrs. Edna Slate $150 a month, and to his mother the residue of his property. This will was void for want of form and was not offered for probate, thus leaving in full force and effect the prior will executed in nuncupative form by public act.
 

 Mrs. Susie Jackson Harris died at her home in Alabama, on January 2, 1930, while the succession of her son Oakley B. Harris was still under administration in this state. The decedent left surviving children and grandchildren, some of whom are residents of Louisiana. She also left a will disposing of her property in Alabama and a codicil to that will in which she bequeathed to Miss Jessie McBride, now Mrs. Sam Maceo, $50,-000.
 

 The will of Mrs. Susie Jackson Harris was probated in Alabama, and her son Richard N. Harris duly qualified as executor under the will. Subsequently, Richard N. Harris qualified as his deceased mother’s testamentary executor in Louisiana.
 

 On January 13, 1932, the surviving three sons and two daughters of Mrs. Susie Jackson Harris, and two grandsons, issue of a predeceased daughter, intervened in the succession of Oakley B. Harris, asking for the recognition of Mrs. Susie Jackson Harris as the mother and forced heir of Oakley B. Harris, and as such entitled to her légitime óf one-fourth of the property, left by her predeceased son and for the reduction of all testamentary donations made by him to the extent they infringe the légitime to which Mrs. Susie Jackson Harris was entitled. The following day, Richard N. Harris, as testamentary executor of Mrs. Susie Jackson Harris, intervened in the proceeding, claiming possession of his mother’s légitime of one-fourth in the succession of Oakley B. Har
 
 *959
 
 ris and demanding a reduction of the testamentary dispositions made by Harris. Subsequently, Mrs. Sam Maceo (the former Jessie McBride) intervened, claiming $50,000 as legatee of Mrs. Susie Jackson Harris from her légitime of one-fourth and demanding the reduction of the special legacies so far as they might encroach on the légitime.
 

 Exceptions of no right or cause of action were filed to the interventions of Richard N. Harris, testamentary executor, and Mrs. Sam Maceo, legatee, of Mrs. Susie Jackson Harris. The exceptions were overruled, and the issue being joined, the district court ordered that all the testamentary dispositions of Oakley B. Harris be reduced to the extent they encroach upon the légitime of Mrs. Susie Jackson Harris in the succession of her predeceased son, and also that the property comprising the légitime be delivered to Richard N. Harris, testamentary executor of Mrs. Susie Jackson Harris, to be administered under her will in accordance with the laws of Alabama. The universal legatee and particular legatee of Oakley B. Harris, the legal heirs of Mrs. Susie Jackson Harris, and Robert S. Link, Sr., applicant for letters as dative testamentary executor, also an intervener in the proceeding, have appealed from the judgment.
 

 Shortly after the succession of Oakley B. Harris was opened in the civil district court for the parish of Orleans and the executor named in the will qualified, a power of attorney executed in regular form by Mrs. Susie Jackson Harris to her son Thomas J. Harris, of - New Orleans, was placed of record in the proceeding. Under the terms of this instrument Thomas J. Harris was authorized to represent his mother in the succession of Oakley B. Harris and to demand, receive, and recover for her account any property coming to her from the succession by inheritance or otherwise.
 

 The will of Oakley B. Harris contained a bequest of $10,000 to Solveig Kellaway and also directed the executor to take from the estate “a sufficient amount in cash and invest it in an annuity paying one hundred dollars a month for account of Edna Oobb, known as Mrs. Raymond Slate.” ,
 

 On October 13, 1928, the Hibernia Bank & Trust Company, executor, filed a provisional account placing thereon for payment all priv-' ileged and ordinary debts as well as the particular legacies to Miss Solveig Kellaway and Mrs. Edna Slate. This account was published according to law, and in due course it was homologated and a distribution of the funds made in accordance therewith.
 

 Miss Kellaway and Mrs. Slate, answering the interventions, after their exceptions of no right or cause of action were overruled, pleaded the interveners were estopped to contest their legacies, because Mrs. Susie Jackson Harris had acquiesced in the executor’s account and had ratified the payment of the legacies, and the interveners could assert no greater rights than she could, if she were living. After the case was submitted, but before the time allowed for filing briefs had elapsed, alleging that he had just learned of the instrument, the attorney for Miss Kellaway filed a supplemental answer in her behalf, alleging as an additional ground of estoppel the execution by Mrs. Susie Jackson Harris, acting by her agent Thomas J. Harris, prior to the filing of the executor’s ac
 
 *961
 
 count, of a notarial act wherein she bound herself not to oppose the payment of Miss Kellaway’s legacy. However, on motion of the attorneys for Mrs. Maceo, the supplemental answer was disallowed.
 

 The Hibernia Bank & Trust Company, testamentary executor, in its answer to the interventions, also pleaded estoppel by record and by conduct to interveners’ attack on its account and the judgment homologating the account.
 

 The exceptions of no right or cause of action filed by Miss Kellaway and Mrs. Slate are predicated on the absence of any allegation in'the interventions that the payment of their legacies encroach upon the légitime of Mrs. Harris. And the argument is made on behalf of these particular legatees that until such allegation is, or can be, made they should not be compelled to discuss a purely moot question. There appears to be considerable force in the argument, but we shall pass all consideration of the legatees’ exceptions, because we think the pleas of estoppel are well founded and should be maintained.
 

 Mrs. Maceo contends that as no personal notice was given Mrs. Harris of the filing of the executor’s account, she is not concluded by the judgment of homologation.
 

 It is well settled that a judgment homologating the account of an executor or administrator is not binding on the heirs unless they were cited or appeared in the proceeding. Miguez v. Delcambre, 109 La. 1090, 34 So. 99.
 

 But a forced heir may ratify a testamentary disposition made to his prejudice, and such ratification will thereafter estop him from contesting the validity of the donation. Nolan v. Succession of New, 31 La. Ann. 552.
 

 The interest of Mrs. Harris in the succession of Oakley B. Harris was that of a forced heir. Her action in appointing her son Thomas J. Harris as her agent with such broad powers was for the purpose of asserting and protecting that interest. The record shows that Thomas J. Harris, as the mandatary of his mother, was fully aware of the filing and publishing of the executor’s account and the proposed payment of their legacies to Miss Kellaway and Mrs. Slate. His knowledge was that of his principal. He made no objection to the payment of the legacies and neither did Mrs. Harris. So far as the legacy to Miss Kellaway is concerned, it was acknowledged and ratified by a formal notarial act executed on June 20, 1928, by Mrs. Harris, through her agent, and by the other heirs of Oakley B. Harris. We think the court below erred in not allowing it to be pleaded on behalf of Miss Kellaway as an additional ground of estoppel. But the instrument is incorporated in the transcript, and we have considered it for whatever it may be worth.
 

 The testamentary disposition in favor of Mrs. Maceo was not executed by Mrs. Harris until about a week after the executor’s account was homologated. It is clear at that time it was not in the contemplation of Mrs. Harris that the particular legacies which had been paid prior thereto should be returned to the succession of Oakley B. Harris. Her unbroken silence from March, 1928, when her action to redu.ce the legacies accrued, until January, 1930, when she died, together with the acts of her mandatary, convinces is that
 
 *963
 
 it was her intention to ratify the legacies to Miss Kellaway and Mrs. Slate, which were merely -reducible, and the reduction of which so far as her légitime is concerned she alone could legally have demanded and obtained.
 

 Having disposed of the question arising on the legacies of Miss Kellaway and Mrs. Slate, we shall proceed to discuss the major question involved in this ease, viz.: The demand of the testamentary executor of Mrs. Susie Jackson Harris, in which Mrs. Jessie McBride Maceo joins, that Mrs. Harris be recognized as the forced heir of Oakley B. Harris; that all donations (except those to Miss Kellaway and Mrs. Slate) be reduced to the extent they infringe on her légitime; and that in due course the testamentary executor of Oakley B. Harris be ordered to deliver to the testamentary executor of Mrs. Susie Jackson Harris all the property which Mrs. Harris was entitled to receive as a forced heir of Oakley Bl Harris, to the end that said property may be administered according to the laws of the state of Alabama. This demand ignores the right of the heirs of Mrs. Harris, her children and grandchildren, to impose their légitime upon the légitime of Mrs. Harris in the succession of Oakley B. Harris.
 

 Article 491 of the Civil- Code declares that persons who reside out of this state cannot dispose of property which they possess here, in a manner different from its laws. But the interveners contend that the article has no application to personal property, which has no situs, that happens to be within the state at the death of a nonresident testator. And they argue that Mrs. Susie Jackson Harris inherited nothing more than a right of action for her légitime which is a movable and descends according to the laws of Alabama. Per contra, her heirs contend that the succession of Oakley B. Harris was still under administration in Louisiana when Mrs. Harris died, and her right of action to the extent of two-thirds of her one-fourth interest in the succession of her son descended to her heirs as an immovable under the laws of this state.
 

 The interveners, appellees, stress the failure of Mrs. Susie Jackson Harris to judicially exercise her right to claim her légitime, and, as a consequence, the transmission of that right to her heirs and assigns under her will. And the appellees argue that the institution of testamentary heirs by Oakley B. Harris was not null, -but only reducible. That Mrs. Harris owning no part of the estate, and not having sued to reduce the donations, transmitted by her will no portion of the estate of her deceased son, but transferred thereby only an incorporeal right of action to reduce his testamentary dispositions. Appellees, in support of their argument, cite articles 940, 1502 and 3542 of the Civil Code and the cases of Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175; Miller v. Miller, 105 La. 257, 29 So. 802; Jordan v. Filmore, 167 La. 725, 120 So. 275.
 

 It is apparent from the record that the reason why Mrs. Harris did not judicially exercise her right to claim her légitime was because there was no necessity for her to do so. That right was acknowledged by all the parties concerned. In an accounting and settlement with the inheritance tax collector, the one-fourth interest of Mrs. Harris in the succession of Oakley B. Harris was recognized and appraised, and the inheritance tax due thereon was paid. And Mrs. Harris, herself,
 
 *965
 
 exercised her right in fact by bequeathing out of that interest the sum of $50,000 to Mrs. Jessie McBride Maceo. In these circumstances, the fact that Mrs. Harris died before she was formally put in possession of her one-fourth interest in the succession of Oakley B. Harris by the perfunctory entering of a judgment to that effect ought not giye the interveners any greater rights than she could, or would, exercise if she were living. But, be that as it may, we shall proceed to the disposal of the issues raised by the appellees.
 

 Article 470 of the Civil Code provides that incorporeal things, consisting only in a right, are not of themselves strictly susceptible of the quality of movables or immovables; nevertheless they are placed in one or the other of these classes, according to the object to which they apply and the rules hereinafter established. And article 471 of the Civil Code declares that the following are considered as immovable from the object to which they apply: The usufruct and use of immovable things. A servitude established on an immovable estate. An action for the recovery of an immovable estate or an entire succession.
 

 Incorporeal things are such as are not manifest to the senses and which are conceived only to the understanding, such as the rights of inheritance, servitudes, and obligations. Civ. Code, art. 460; Succession of Sinnot v. Bank, 705 La. 705, 30 So. 233.
 

 Appellees contend that Mrs. Harris had no right of inheritance in the succession of her deceased son, but only a right to demand the reduction of excessive donations. It is true that in the hereinabove mentioned authorities cited by appellees, it is said that a forced heir is nothing more than a legal heir, who by reason of his relationship to the deceased has had reserved to him by law the right to claim, if he so elects, a certain proportion of the property of the deceased which may have been disposed of to his prejudice. It is also true, as stated in the same authorities, that the action of a deceased person in disposing of his entire estate is not absolutely null, and if the forced heirs fail to claim their légitime within the prescriptive period the ownership conveyed by the will is maintained.
 

 But, after all, a forced heir has a right to the legal portion coming to him out of the estate of the testator. The law establishes that right, which cannot be defeated in a proper ease. It needs only to be asserted to be allowed. The right to claim the légitime is merely a corollary of the légitime, itself, whether it be an inheritable or merely a reserved right. Without the légitime as fixed by law the right to claim it would be nonexistent.
 

 We think that so far as Mrs. Susie Jackson Harris may have had an action for her one-fourth interest in the succession of her deceased son, her légitime being recognized, it was for the recovery or partition of an entire succession. Hence, under articles 470 and 471 of the Civil Code, hereinabove mentioned, the right of action from the object to which it applies was an immovable and, as such, subject to distribution according to the laws of this state.
 

 The estate of Oakley B. Harris, at the time of his death as disclosed by the inventory, was composed of both movables and immovables and active debts. As long as the succes
 
 *967
 
 sion remains open and undivided it is an entirety. The one-fourth interest of Mrs. Harris is not in a particular thing or class of things belonging to the succession, but to the whole succession. That interest can be enforced as against the wishes of the other heirs only by partition of the whole estate in which the respective rights of all the heirs can be contradictorily settled with one another. Marcenaro v. Mordella, 10 La. Ann. 772.
 

 The cited case of Marcenaro v. Mordella is particularly appropriate to the case at bar. There the facts, as set forth in the opinion of the court, were as follows, viz: Anna Bardino had two children by her marriage to Angel Mordella. One child — Marie Rose Mordella — married Bertoli, and resided with her husband in New Orleans. The other child — • Minna Isabelle — resided with her 'mother at Gibraltar, in Europe. After the death of Angel-Mordella, Anna Bardino married J. B. Marcenaro at Gibraltar, where they continued to reside until the death of Anna Bardino. Joseph Bardino, the german brother of Anna Bardino Marcenaro, died in New Orleans, his domicile, shortly before the marriage of his sister Anna Mordella with Marcenaro. By his will he bequeathed to his sister $2,000. A considerable portion of his estate remained undisposed of by will, and, consequently, under the law of this state, was inherited by his sister Anna Bardino Marcenaro and a half-brother, Lorenzo Basso; the german sister being entitled to three-fourths and the half-brother to one-fourth. The succession consisted of real estate in New Orleans, slaves, debts, etc.
 

 Nicholas Bertoli, the husband of Anna Bardino Mordella’s daughter, Marie Rose Mordella, was one of the executors of Joseph Mardino. He also obtained letters of curator-ship on the succession of his mother-in-law, Anna Bardino, the deceased wife of- Marcenaro. On Bertoli’s death, his wife, a forced heir of her mother, Anna Marcenaro, was appointed tutrix of their children and executrix of her husband’s will.
 

 The suit was brought by Marcenaro, surviving husband of Anna Bardino, to recover from Bertoli three-fourths of certain funds alleged to have been collected by Bertoli for account of the succession of Joseph Bardino. Plaintiff alleged that under the common law he was entitled as surviving husband of Anna Bardino to be administrator of her estate and to reduce the funds claimed to his possession and make them his own.
 

 On these facts, this court held that Marcenaro could not, in virtue of the right with which he was invested by the common law in his wife’s movable property, cldim, after her death, her movables in course of administration in this state, to the prejudice of those whose right thereto flowed from our own statute of distribution. The court, in the course of its opinion, pointed out that in England personal effects alone are placed under administration, while the real estate descends at once to the heir and cannot be charged in his hands with debts, except by specialty, etc. The personal effects are- distributed to the next of kin. The real estate descends to the heir at law, who often inherits to the exclusion of others equally near in relationship to the ancestor. While in this state immovables and movables are alike placed under administration, and are inherited by the same persons and in the same proportions. And the
 
 *969
 
 court referred to article 463 (article 471) of the Civil Code, providing that an action for the recovery of an immovable, or an entire succession, is considered as an immovable from the object to which it applies. Consequently, the court held that the interest of Mrs. Anna Bardino Marcenaro was in the whole succession of her deceased brother Joseph Bardino, and not in a particular thing or a class of things belonging to the succession. That the only right of action vesting in Mrs. Marcenaro was one for a- partition in which the rights of all the heirs could be settled contradictorily with each other. And that this right, whether it be considered a real right or a chose in action of the common law, had its domicile in this state.
 

 By substituting the name of Marcenaro for that of Mrs. Maceo and the Alabama executor, Anna Mordella for that of Mrs. Susie Jackson Harris, and that of Joseph Bardino for that of Oakley B. Harris, the analogy between the cases is complete.
 

 In the case of Bone v. Sparrow, 11 La. Ann. 185, this court again had occasion to pass upon the point, and to apply the provision of article 471 of the Civil Code. There the court, approving Marcenaro v. Mordella, held that the laws of Louisiana must control the distribution of the residuary interest of a succession under administration in this state; the right of action for the recovery of the same being immovable from the object to which it applies. And in Williams v. Pope Mfg. Co., 52 La. Ann. 1417, at page 1437, 27 So. 851, 860, 50 L. R A. 816, 78 Am. St. Rep. 390, the court referred approvingly to Bone v. Sparrow, as follows, viz.: “In Bone v. Sparrow, 11 La. Ann. 185, it was held that by the laws of Pennsylvania and Maryland, if the husband has not, during his life, reduced to possession the ehoses in action of his wife, they will pass to her representatives; and the court applied that rule to rights, credits, and ehoses in action which were assets of the estate of a decedent which were partly situated in Mississippi and partly in Louisiana.”
 

 Again in Weber v. Ory, 14 La. Ann. 537, as shown by the syllabus, this court held: “The right of action of an heir, to compel a partition of the immovables and slaves belonging to the succession, in order that his portion may be set off to him, as owner, is an immovable — and when such a right is conveyed by last will, the instrument must conform to our laws, or it cannot have any effect.”
 

 Mrs. Susie Jackson Harris never reduced to possession her one-fourth undivided interest in the succession of Oakley B. Harris. The estate at the time of her death was under administration in this state, and still is. The only property owned by Mrs. Harris and composing her succession in Louisiana is her interest in the succession of her deceased son. Reduced to its last analysis, the object of the Alabama executor and of Mrs. Maceo in this litigation is to obtain possession of that interest. Their action is not one merely for the reduction of excessive donations which is not contested, but its main purpose is to recover and reduce to possession of the Alabama executor for distribution according to the laws of Alabama, to the prejudice of the forced heirs of the de eujus, the interest of Mrs. Harris in the succession of her deceased son, which is resisted. A right of action to reduce an excessive donation is wholly distinct from a right of action to recover or parti
 
 *971
 
 tion an estate. The effect of reducing the excessive donations contained in the will of Oakley B.'Harris is to formally establish the one-fourth interest of his mother in his succession. This interest is an undivided one. It is an entire thing — an entire estate — not to be confused with any particular object or case of objects belonging to the son’s succession. That is the thing in dispute. The action of the Alabama executor, in which he is joined by Mrs. Maceo, to recover and reduce it to his possession, is an incorporeal immovable. It is for the recovery of an entire succession. Cf. White v. White, 50 La. Ann. 104, 23 So. 95. Hence the right of action herein asserted by the appellees must be governed by the laws of Louisiana, and not by the laws of Alabama. The will made in Alabama cannot destroy the légitime of the appellants in the testatrix’ estate in Louisiana.
 

 To hold otherwise would present the legal anomaly of a different order of distribution for the interest of a nonresident forced heir from that of a resident forced heir in a Louisiana succession.
 

 Appellee, Mrs. Maceo, in support of her contention, cites articles 1756, 1757, 1758, and 1759 of the Civil Code, to the effect that a natural obligation although unenforceable by action is binding on the party who makes it in conscience and according to natural justice; and that a natural obligation rests on those Who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only. Also article 2274 of the Civil Code, which provides that: “The confirmation, ratification, or voluntary execution of a donation by their heirs or assigns of the donor, after his decease, involves their renunciation to oppose either defects of form or any other exceptions.”
 

 Appellee, Mrs. Maceo, argues that Mrs. Harris was under a natural obligation to execute the donation of $50,000 which Oakley B. Harris on his deathbed attempted to make to Mrs. Maceo, which donation was void for want of form. And that it was in order to discharge that obligation Mrs. Harris executed the codicil to her will, the codicil reciting, substantially, that whereas Oakley B. Harris had endeavored to bequeath Mrs. Maceo $50,000, which bequest was invalid, and being desirous that the wishes of her deceased son should be carried out-, and also being desirous that she and her grandchildren should pay the debt, she provided for the specific manner in which the debt should be paid.
 

 The legacy of $50,000 contained in the void will of Oakley B. Harris was an intended gratuity which never became operative because the will was null for want of legal form. Hence, the intended legacy never became a debt or obligation of the estate of Oakley B. Harris, and if the donation of $50,000 by Mrs. Harris to Mrs. Maceo was made in order to fulfill a moral obligation to execute the invalid donation of her deceased son, the donation is payable out of her individual estate and not out of the estate of her deceased son.
 

 Whatever may have been the motive of Mrs. Harris for making it, the donation contained in the codicil to her will is nothing more than a testamentary disposition in favor of Mrs. Maceo for $50,000. Mrs. Maceo, herself, recognizes this, because her intervention in
 
 *973
 
 this proceeding is based on her claim that she is a legatee of Mrs. Harris. This clearly appears from article 9 of her petition, wherein she expressly alleges that she “is a legatee of the said Mrs. Susie Jackson Hands to the extent of fifty thousand ($50,000.00) dollars, and is entitled, as such, to be paid said amount by preference from the proceeds of the estate of the said Susie Jackson Harris, deceased.” Manifestly, the legacy to Mrs. Maceo cannot be discharged to the prejudice of the forced heirs of the testatrix.
 

 There are several other questions raised in the ease which we do not deem it necessary to discuss or mention.
 

 For the reasons assigned, it is ordered that the judgment herein appealed from be annulled. And it is now ordered that there be judgment recognizing Mrs. Susie Jackson Harris as the mother and forced heir of Oakley B. Harris, and, as such, entitled to her légitime of one-fourth of the property or estate left by Oakley B. Harris; and that there be judgment reducing the dispositions mortis causa (except the legacies to Miss Solveig Kellaway and Mrs. Edna Slate, which are maintained), to the extent they infringe on the légitime to which Mrs. Susie Jackson Hands is entitled in the estate of Oakley B. Harris.
 

 It is further ordered that the intervention of Richard N. Harris, Frank S. Harris, Thomas J. Harris, Mrs. Kate Harris Link, Mrs. Carrie Harris Simpson, Richard Harris Parker, and Lawrence Parker be maintained and they are recognized as entitled to a légitime of two-thirds upon the légitime of one-fourth of Mrs. Susie Jackson Harris in the succession of Oakley B. Harris.
 

 It is further ordered that the successions of Oakley B. Harris and Mrs. Susie Jackson Harris be administered according to the laws of this state and to the views and judgment herein set forth.
 

 It is further ordered that, with the exception of their demand for the recognition and enforcement of the légitime of Mrs. Susie Jackson Harris in the succession of Oakley B. Harris, the demands of the interveners Richard N. Harris, testamentary executor of Mrs. Susie Jackson Harris, and Mrs. Jessie McBride Maceo, be rejected, with full reservation to urge whatever rights they may possess in the succession of Mrs. Susie Jackson Harris upon the final liquidation and settlement of the succession of Oakley B. Harris, except as to such rights and claims as are herein adjudicated and settled.
 

 All costs of this proceeding are to be paid by the succession of Oakley B. Harris.
 

 ST. PAUL, J., absent.
 

 BRUNOT, J., concurs in decree.
 

 O’NIELL, O. J., is of the opinion that the judgment appealed from is correct, and will assign his reasons therefor.