McBRIDE, Judge.
Plaintiffs and appellees, Susie Cleo Jackson Brown and Herman Conrad Jackson, alleging themselves to be the children and sole and only heirs at law of decedent, brought this suit against Lucy Jackson Ware, sister of decedent and administratrix of his succession, and also against the surety on her administratrix bond, for the recovery of $1,562.61, being the total amount of the estate of decedent as shown by the inventory. The plaintiffs allege that James Jackson had been married but once and then to Octavia Bender from whom he was divorced; that they are issue of the said marriage; that decedent’s succession was opened by his sister, Lucy Jackson Ware, a resident of Vicksburg, Mississippi, who has perpetrated a fraud on the court and on plaintiffs in that she falsely alleged in her application for appointment as ad-ministratrix of the succession that decedent left no children; that the sole assets of the succession were the funds on deposit in Savings Account No. 6603, National Bank of Commerce, standing in the joint names of decedent and Josephine Jackson, another of his sisters, which aggregated $1,562.-61; that the account filed by Lucy Jackson Ware as administratrix showed no debts except court costs and the fees of her attorneys which total $215; that- the remainder of the funds left by decedent, $1,-347.61, were upon the homologation of the account fraudulently paid by the admin-istratrix to herself. Petitioners then aver that as sole heirs at law of decedent they are entitled to inherit his estate and pray for a judgment for $1,562.61 against Lucy Jackson Ware .and the surety- on her ad-ministratrix bond in solido.
James Jackson died intestate at his residence in New Orleans’ on July 21, 1951. Early in August of-that year Susie Cleo Jackson Brown communicated by telephone with Mr. John H. Hammel, Jr., a local attorney, regarding the opening of her father’s succession, and the attorney, on August 8, 1951, learned of a joint savings account in the National Bank of Commerce standing in the names of James Jackson or Josephine Jackson, in which there was a balance of' $1,562.61.
About August 23, 1951, when Mr. Ham-mel was absent from the city, Josephine Jackson, the sister of decedent whose name appeared as a joint owner of the savings account, appeared at his office and spoke with his secretary. Upon returning to New Orleans and learning of the visit of Josephine Jackson, Mr. Hammel addressed a letter to her at Vicksburg, Mississippi, in which he notified her that he represented Susie Cleo Jackson Brown and Herman Conrad Jackson, the children of James Jackson. He informed Josephine Jackson of the joint savings account and requested her to advise him of “the most convenient manner” of dividing the funds therein between herself and James Jackson’s two children.
On August 31, Mr. Hammel received a letter from an attorney in Vicksburg, who stated he represented Josephine Jackson and that she was claiming ownership of *196 all of the funds in the savings account. Several letters then passed between the two attorneys, the last on October 20, 1951, wherein the attorney in Vicksburg informed Mr. Hammel that he had advised Josephine Jackson to seek the services of some attorney in New Orleans.
On September 28, 1951, while Mr. Ham-mel and the attorney in Vicksburg were corresponding with each other, as aforesaid, the Succession of James Jackson was opened in the Civil District Court for the Parish of Orleans, docket No. 308-478, by Lucy Jackson Ware, who filed a petition alleging that she was a sister of the decedent and that he died intestate on July 21, 1951, leaving no ascendants or descendants, but leaving “collateral relations, of whom.petitioner is one.” Lucy Jackson Ware also averred that James Jackson left property and an administration of his estate was necessary and she desired to be appointed .administratrix. She prayed that an inventory of the property left by him be taken and that in due course she be confirmed as administratrix.
The inventory was made on the very same day, and we notice that it is not signed by Lucy Jackson Ware, the applicant, but only by the officiating notary public, the appraisers, and two witnesses. The inventory shows that the entire estate of decedent is composed of the sum of $1,-562.61 on deposit in Savings Account No. 6603 of the National Bank of Commerce. The application of Lucy Jackson Ware for appointment as administratrix was duly published and after the usual legal delays her appointment was ordered upon her compliance with the requisites of the law. She then took oath and furnished an ad-ministratrix’ bond in the sum of $2,500, with Maurice B. Gatlin, one of her attorneys as surety thereon, after which she was named administratrix of the succession and letters as such were issued to her on October 10,1951.
On the next succeeding day, Lucy Jackson Ware filed her “First Provisional Account” which, after the legal period of publication, was homologated on October 25, 1951. The account shows the following items :
“Receipts:
Total amount on hand $1562.61
Proposed
Disbursements:
Maurice B. Gatlin,
costs advanced $25.00
Maurice B. Gatlin,
advertising & future costs 50.00
Maurice B. Gatlin,
Notarial Fee 25.00
J. Aubrey Gaiennie,
Appraiser fee 7.50
John Thomas, Appraiser Fee 7.50
Gatlin & Hill, Attorneys fee 100.00
Lucy Jackson Ware 1347.61
$1562.61 $1562.61”
Lucy Jackson Ware made no appearance in court at the time the account was homologated and the correctness of the account was “proven” by one of the attorneys for the administratrix who testified:
“ * * * I am familiar with the affairs of that succession, and I have examined the Administratrix’ First Provisional Account and find same to be true and correct to the best of my knowledge.”
It is conceded that after Lucy Jackson Ware became the administratrix, her attorneys presented a copy of her letters of administration to the National Bank of Commerce, which thereupon issued its check to Lucy Jackson Ware, as administratrix for $1,562.61, in representation of the balance in the joint savings account. The check was handed by Lucy Jackson Ware to Mr. Gatlin, who retained it in his keeping, and upon homologation of the admin-istratrix’ first provisional account, he caused Lucy Jackson Ware to endorse the check and then issued to her his own check for $1,347.61 representing the amount of the bank’s check less the aggregate amount of the court costs, future costs, publication *197 costs, notary’s and appraisers’ fees and the fee of her attorneys as shown on the account. This ended the Succession of James Jackson, or so thought Lucy Jackson Ware and her attorneys, and no further proceedings were taken therein by them.
This suit then ensued. Several exceptions were interposed by Lucy Jackson Ware and the surety on her bond, which were overruled, except the exception of prematurity filed by the surety which was maintained and resulted in the dismissal of the suit as against the surety.
Lucy Jackson Ware, through the same attorneys who had represented her in the succession proceedings, filed an answer in which she alleged that as there had been no opposition to her account, which she had filed in the succession proceedings, the judgment of homologation thereof stands as “a thing adjudged and not subject to further inquiry”; that plaintiffs’ right, if any, is to oppose the final account if and when it is filed; that the funds in the joint savings account belonged to Lucy Jackson Ware alone. In the alternative, Lucy Jackson Ware alleged that plaintiffs are not the “legal children” of James Jackson and that they are attempting to defraud the court by holding themselves out as such. She prays that the suit of Jackson’s two children be dismissed.
Some months after Lucy Jackson Ware had filed her answer and the case had been set down on the trial docket, Josephine Jackson, who it must be remembered was named the joint holder of the savings account with James Jackson, filed a petition of intervention and third opposition making such appearance in the suit through the same attorneys who were then representing Lucy Jackson Ware. Josephine Jackson claimed the funds in the savings account as her own, and alleged that as she had been in bad health it was decided between herself and Lucy Jackson Ware that the latter would be made administratrix of James Jackson’s succession; that in the account filed in the succession proceedings the attorneys representing the administratrix confused Lucy Jackson Ware with Josephine Jackson and erroneously secured the approval of the court to make the payment of the succession proceeds to Lucy Jackson Ware instead of to Josephine Jackson; that as the funds belonged to her she is “perfectly satisfied” with the proceedings which had been taken by Lucy Jackson Ware and that her desire is that the suit of the plaintiffs be dismissed.
After this petition of intervention and third opposition had been filed, Lucy Jackson Ware, through the same attorneys, filed a supplemental and amended answer to the suit of plaintiffs, in which she alleged that in the succession the attorneys “confused” her with Josephine Jackson and erroneously paid funds to her, which state of affairs has been amicably adjusted between herself and her sister, Josephine Jackson.
The plaintiffs interposed an exception of no cause of action to the intervention and third opposition of Josephine Jackson which was overruled. However, neither they nor Lucy Jackson Ware ever filed answers to Josephine Jackson’s intervention and third opposition.
After the case was tried on its merits below, the judge concluded that as there was no evidence showing with certainty to whom the funds on deposit in the joint savings account belonged, the legal presumption was that the funds were owned jointly by the decedent and his sister, Josephine Jackson. Judgment was then rendered in favor of James Jackson’s two children and against Lucy Jackson Ware for the sum of $566.31, representing one-half of the balance which stood in the savings account less $215 for the succession costs which had been paid by Lucy Jackson Ware, and there was further judgment on the intervention and third opposition in favor of Josephine Jackson and against Lucy Jackson Ware for $781.30.
Lucy Jackson Ware perfected this sus-pensive and devolutive appeal from the judgment and the appeal has been answered by the plaintiffs who pray:
(1) That the judgment in favor of plaintiffs be increased from $566.31 to $1,562.61;
*198 (2) That judgment be rendered for said amount against Maurice B. Gat-lin, the surety on the administratrix’ bond and that the judgment be in solido against both the administratrix and the surety;
(3) That the portion of the judgment running in favor of Josephine Jackson, intervenor and third opponent/ be reversed. ■
The judgment which maintained the exception of prematurity filed by the surety -was signed on December 24, 1952. Plaintiffs, by answering this appeal, seek to have us review the said judgment which dismissed the suit as against Mr. Gatlin, the surety on the bond. It is plain at the outset that Maurice B. Gatlin is not before us on the appeal of Lucy Jackson Ware as the plaintiffs herein have not seen fit to take an appeal from the judgment below dismissing the surety from the suit. Their answer to the appeal of Lucy Jackson Ware cannot operate as an appeal and give this court jurisdiction insofar as the surety, a third party, is concerned.
The same thing may be said regarding Josephine Jackson, the intervenor and third opponent who recovered judgment against Lucy Jackson Ware. The plaintiffs did not appeal from this judgment and they cannot now bring Josephine Jackson before us by making answer to the appeal taken by Lucy Jackson Ware.
It is well established in this state that an answer to an appeal cannot serve the purpose of an appeal with respect to bringing into court parties against whom a plaintiff’s claims have been dismissed. Thalheim v. Suhren, 18 La.App. 46, 137 So. 874; N. O. Nelson Mfg. Co. v. Wilkerson, 152 So. 157; Maheu v. Employers Liability Assur. Corporation, Ltd., La.App., 25 So.2d 363; Reid v. Monticello, La.App., 33 So.2d 760; Hirsch v. Kendrick, La.App., 43 So.2d 692.
There can be no doubt that the plaintiffs, Susie Cleo’Jackson Brown and Herman Conrad Jackson, are the children of James Jackson and are issue of Jame'S Jackson’s marriage with Octavia Bender, which was dissolved by a judgment of divorce signed by the Civil District Court for the Parish of Orleans on March 29, 1939, in the proceedings bearing docket No. 229-624. It is true that at one time Susie Cleo Jackson represented herself to be the child of one Eddie Hausey and on this representation she collected $1,000 from a life insurance company upon the death of Hau-sey under a policy issued to him. But Susie Cleo Jackson has a plausible explanation for having stated to the insurance company that she was Hausey’s daughter. After her divorce from James Jackson, Octavia Bender went to live with Eddie Hausey and they lived together for some time and Sus.ie Cleo Jackson resided with them. Hausey was insured under a life policy for $1,000, in which he named Susie Cleo Jackson as his child and beneficiary, and upon his death the insurer refused to pay the proceeds of the policy to Susie Cleo Jackson unless she receipted for payment as the child of the insured which she did in order to obtain the money. Certified copies of the birth certificates of Susie Cleo Jackson and Herman Conrad Jackson are part of the record and show that they are the children of James Jackson issue of his marriage with Octavia Bender. There is not the slightest doubt in our minds that Lucy Jackson Ware not only knew all along of the existence of Susie Cleo and Herman; Conrad Jackson, but she also knew that they are the children and lawful issue of the marriage between James Jackson and Octavia Bender. By making the oath appended to her petition for appointment as administratrix of James Jackson’s- succession, Lucy Jackson Ware perjured herself and not only perpetrated the grossest of frauds on the children of the decedent, but as well imposed upon the court. And at this point we cannot refrain from making the observation that Lucy Jackson Ware’s attorneys should have known that James Jackson had two children, and the reason why we say this is because one of these attorneys represented James Jackson ini Ms-suit against Octavia Bender for the divorce and the record in the divorce proceedings *199 shows that this attorney appeared for James Jackson at the trial of a rule brought by Octavia Bender for alimony pendente lite for herself and the two children. This attorney should have also known that the judgment of divorce awarded custody of the minor children, Susie Cleo and Herman Jackson, to Octavia Bender.
Lucy Jackson Ware and Josephine Jackson presented no evidence whatsoever on the trial of this suit and attempted to support the allegations of their answer and the intervention and third opposition by the production of certain ex parte affidavits, which the trial judge refused to admit into the evidence over the objection of plaintiffs’ counsel. This ruling was correct and we will pay no attention to the affidavits notwithstanding that counsel reserved a bill of exceptions to the ruling of the judge and made the affidavits part of the bill.
Lucy Jackson Ware takes no exception to or challenges the judgment which was rendered in favor of Josephine Jackson on the intervention and third opposition.
Appellant argues that this is a new and distinct suit and that it could not be “engrafted upon” the succession proceedings. We can dismiss that contention with the bare statement that it is now too late for appellant to raise that question as her remedy was to except to the form of procedure in the court below. Not having raised the issue there, we cannot pass on it at this stage of the proceedings.
We perceive no merit in the contention that the judgment homologating the first provisional account stands as res judi-cata and affords Lucy Jackson Ware immunity from an attack such as plaintiffs have levelled against her. It is well settled that a judgment homologating the account of a succession officer is not binding on the forced heirs unless they are cited or appeared in the proceedings. Miguez v. Delcambre, 109 La. 1090, 34 So. 99; Succession of Harris, 179 La. 954, 155 So. 446.
Frankly there is one circumstance beyond our powers of understanding. Although the contention is made that all of the money in the savings account belonged solely to Josephine Jackson and that the funds were paid to Lucy Jackson Ware only because of the confusion which existed in the minds of the attorneys as to the identities of the two women, yet the inventory shows that the funds were listed therein as belonging entirely to the decedent, James Jackson, and payment was evidently made by Lucy Jackson Ware to herself on the premise that she was his heir. This inventory was made by one of the attorneys representing both women in this suit in his capacity of notary public.
In their answer to the appeal plaintiffs pray that their judgment against Lucy Jackson Ware be increased to the amount of $1,562.61, but as has already been stated we cannot inquire into the correctness of the judgment insofar as it recognized Josephine Jackson to be the owner of a one-half interest in the funds which stood in the joint bank account. However, we do detect error in the judgment in the matter of the award to plaintiffs in that the trial judge in effect gives credit to Lucy Jackson Ware for the $215 she had expended for court costs and legal expenses in connection with her appointment as administratrix and the filing of her first provisional account. We fail to comprehend on what theory of law Lucy Jackson Ware should be allowed such credit when the evidence and the succession proceedings on their face unmistakably show that Lucy Jackson Ware instigated the succession proceedings for one reason only— to defraud James Jackson’s two children of their patrimony. To allow Lucy Jackson Ware to withhold from plaintiffs an amount sufficient to reimburse her for her expenditures would to all intents and purposes allow her to allege her own turpitude and secure an advantage for her own wrongdoing. The law does not permit this.
For the reasons assigned, the judgment appealed from insofar as it runs in favor of the plaintiffs and against Lucy Jackson Ware is amended so as to increase the amount from $566.31 to the sum of $781.31 *200 and as thus amended and in all other respects the judgment is affirmed.
The appellant is to pay the costs of this appeal.
Amended and affirmed.