Samuel ZEMURRAY, III

v.

**WHITNEY NATIONAL BANK OF NEW ORLEANS, as Executor of the Succession of Sarah W. Zemurray and as nominated trustee of the trust established by the will of Sarah W. Zemurray, Zemurray Foundation, Alison Bixby Stone Foundation, Doris Z. Stone, as Executrix of the Succession of Roger T. Stone, Herbert Hirsch, as nominated trustee of the trust established by the will of Sarah W. Zemurray.**

Civ. A. No. 84–2078.

United States District Court,
E.D. Louisiana.

Aug. 22, 1986.

Raymond J. Salassi, Jr., David F. Edwards, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff.

Thomas B. Lemann, Benjamin R. Slater, Jr., Perry R. Staub, Jr., Walter M. Hart, III, Monroe & Lemann, New Orleans, La., for Whitney Nat. Bank of New Orleans, Alison Bixby Stone Foundation, Zemurray Foundation, Doris Z. Stone.

Frederick A. Kullman, Theresa Gallion, Kullman, Inman, Bee & Downing, New Orleans, La., for Herbert Hirsch.

Moise W. Dennery, Maunsel W. Hickey, McCloskey, Dennery, Page & Hennessy, New Orleans, La., for Doris Z. Stone; intervenor.

## ORDER AND REASONS ON MOTIONS IN LIMINE

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court upon the parties' cross motions for partial summary judgment. Although the Court was concerned that decision on the matters raised in the motions might improperly exclude from trial evidence this Court or any reviewing court might ultimately determine to be relevant, the Court agreed to decide as motions in limine certain issues set forth in the Court's Minute Entry of March 20, 1986, modified upon request of counsel, by letters of March 27, 1986, filed in the record herein.[1]

These issues arise in the context of the plaintiff's demands for reduction of alleged excessive donations by the decedent Sarah Zemurray, necessitating a calculation of the active mass of the succession of Sarah Zemurray and of amounts to be credited toward the legitime of Sarah Zemurray's forced heirs, plaintiff Samuel Zemurray III (by representation) and intervenor Doris Zemurray Stone. Preliminary to resolving these broad issues, the following more specific legal questions have arisen:

1. Whether charitable donations made by the decedent should be included in calculation of the active mass;

2. Whether, in valuating lifetime donations of immovable property as of the date of Mrs. Zemurray's death, the Court should take into consideration changes in the area surrounding the property in question occurring since the time of the donations;

3. Whether any interest or inflation factor is included in valuing donations of money for purposes of calculating either the active mass or credits against the forced portion;

4. Whether trust principal must be excluded from the computation of credits

1. In order to avoid premature exclusion of evidence, the Court cautioned the parties that a proffer of any evidence deemed irrelevant under the Court's rulings on the motions in limine should be made at trial and that failure to proffer such evidence shall be deemed a waiver of the parties' rights to complain of the Court's rulings on the issue in question.

against plaintiff's legitime if the trusts in question do not conform to Louisiana law on placing the legitime in trust;

5. Whether income distributions from trusts are included in calculating credits against plaintiff's legitime, and

6. Whether for purposes of calculating the active mass, the active mass should include the value of property originally placed in trust as of the date of the decedent's death or whether the active mass should include the date of death value of the trust corpus.

The Court will address each of these issues in turn.

### 1. Mrs. Zemurray's Charitable Donations

As indicated above, this is an action for reduction of excessive donations. As stated in plaintiff's memorandum in support of motion for partial summary judgment, plaintiff seeks reduction of particular lifetime and testamentary donations made by Mrs. Zemurray to the Zemurray Foundation, the Alison Bixby Stone Foundation and Roger T. Stone.[2] The governing Louisiana provisions concerning reduction are set forth in Articles 1502–18 of the Civil Code of 1870.[3] Article 1502, entitled "Reduction of Excessive Donations," states as follows:

Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.

Article 1505, entitled "Calculation of the disposable portion on mass of succession," states in pertinent part as follows:

To determine the reduction to which donations, either inter vivos or mortis causa are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his [her] decease; to that is fictitiously added the property deposed of by donation inter vivos, according to its value at the time of the donor's decease, in the state in which it was at the period of the donation.

Article 1523 of the Civil Code describes three types of inter vivos donations, gratuitous, onerous and remunerative:

There are three kinds of donations inter vivos:

The donation purely gratuitous, or that which is made without condition and merely from liberality;

The onerous donation, or that which is burdened with charges imposed on the donee,

The remunerative donation, or that the object of which is to recompense for services rendered.

As defined in Article 1524 of the Civil Code, "The onerous donation is not a real donation, if the value of the object given does not manifestly exceed that of the charges imposed on the donee." The significance of the distinction between gratuitous donations on the one hand and onerous and remunerative donations on the other, is set forth in Article 1526:

In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object exceeds by one-half that of the charges or of the services.

2. In light of Article 1507, addressing the order of reduction, the Court questions whether the Court has any discretion concerning what donations should be reduced. See L. Oppenheim, 10 La.Civil Law Treatise, *Successions and Donations,* § 179, p. 285. The parties have not addressed this issue, the Court is not aware whether resolution of this issue has any practical effect on the issues before the Court; and accordingly the Court expresses no opinion on this question. We are also not called upon to determine whether plaintiff has ratified those dona-

tions as to which reduction is not sought and has, therefore, waived his claims of impingement on his legitime to the extent his legitime would have been satisfied from such donations.

3. The Court has applied the law in effect at the time of the decedent's death, without regard to subsequent changes in the law, absent express provision for retroactive application of any newer laws.

The parties in this case disagree as to whether particular inter vivos donations can be classified as onerous. The parties further disagree as to who bears the burden of proving whether a particular donation is gratuitous or onerous. Resolution of these issues necessitates an evaluation of all charitable donations made by Mrs. Zemurray, as only gratuitous charitable donations must be fictitiously added to the aggregate of property belonging to the decedent at the time of her decease to compute the active mass of the decedent's estate.[4]

The threshold question is how the Court should determine whether a donation is onerous or gratuitous. The jurisprudence interpreting Article 1526 has been labeled "inconsistent and difficult to reconcile." *See* Oppenheim, § 206 at p. 311. The Court has nonetheless reviewed this jurisprudence in order to glean whatever guidance it may offer, particularly as applied in the context of more modern principles of estate planning. In this regard, the Court would observe that Louisiana is a civilian state, and that proper interpretation and application of the rules of law in Louisiana dictates utilization of a civilian methodology. The vitality of the civilian methodology rests in part upon the courts' freedom to relate its rules in a realistic manner to particular problems confronting the court. Moreover, the civilian system is not dependent upon precedent in the interpretation and application of its laws. Thus, although the authorities cited by the parties are persuasive of the interpretation of the code articles applicable to this case, the Court deems itself obligated to insure that precedent furthers a rational and equitable result.[5]

The Court will accordingly discuss chronologically representative authorities cited by the parties on the characterization of donations as onerous or gratuitous. In some instances, the authorities discussed below expressly address the issue of who bears the burden of proving how a particular donation should be classified; in others, the courts' approach must be inferred.

The earliest decision illustrating an application of Article 1526 is *Whitman v. Whitman*, 206 La. 1, 18 So.2d 633 (1944). In that case, eight of nine siblings transferred their eight/ninth's interest in certain property to their youngest brother through an instrument stating in pertinent part, "[W]e ..., for and in consideration, have granted, sold and conveyed ... [certain property]." 18 So.2d at 635. The donors ultimately moved to annul the alleged donation to recover the property from certain third parties to whom the donee had sold the property.

In rejecting the plaintiffs' claims, the court initially observed in its statement of facts, "The act was not a gratuitous donation, if in fact it was a donation at all, but was made in consideration for the transferee's promise to take care of his mother to the end of her life." *Id.*, 18 So.2d at 634. The bases for this conclusory statement of fact appear in the court's later observation, "There is no proof in this case that the value of the property donated exceeded by one-half the value of the charges imposed upon the donee or of the services rendered by him." *Id.*, 18 So.2d at 638–39. Evidence in the record, albeit "indefinite," tended to show that "without attempting to make an exact calculation of the value of services rendered by the donee", the value of the services "greatly exceeded" two-thirds of the value of the property donated. *Id.*, 18 So.2d at 639.

In reaching this decision, the *Whitman* court relied upon *Hearsey v. Craig*, 126 La. 824, 53 So. 17 (1910), wherein the court observed that forced heirs seeking to annul a conveyance purporting to be an onerous donation have the burden of proving that

4. Thus, the necessary evaluation of all donations is distinguishable from the focus placed by plaintiff upon specific donations to the Zemurray Foundation, the Alison Bixby Stone Foundation and Roger Stone, in connection with his claim for reduction in excess of the reduction to

which he might be entitled if reduction is calculated in the order designated by the code.

5. *See generally* Tate, *Civilian Methodology in Louisiana,* 44 Tul.L.Rev. 673–80 (1970).

the value of the property donated exceeds by one-half that of the service intended to be compensated and of the charges imposed. *See* 18 So.2d at 639–40. Accordingly, this Court perceives the *Whitman* and *Hearsey* courts' analyses as placing the burden of proof of characterizing a donation upon the party challenging the onerous nature of a donation, where the donation is facially to recompense services or burdened with any type of "obligation" or "charge."

The decision in *Kiper v. Kiper,* 214 La. 733, 38 So.2d 507 (1948) (suit for partition; plaintiffs opposing probation of will seeking reduction of donation of immovable property) is not inconsistent with *Whitman.* In *Kiper,* the court appeared to accept a donation as remunerative based upon the decedent's express intention in her will to compensate a child for services rendered. The will there provided, "Mamie Kiper [the donee] has lived with me, has taken care of me and has been my sole support since the death of my husband...." 38 So.2d at 508. The donee affirmatively averred that her services to the decedent were worth well in excess of the appraised value of the property, and there was conflicting evidence offered by both sides at trial with regard to the value of the services. The *Kiper* court did not comment upon who bore the burden of proving the services were sufficient to render the donation remunerative, but found that the value of the services rendered was equal to the value of the bequest.

The construction and application of Article 1526 arose in the context of a concursus for ownership of oil royalties in *Placid Oil Co. v. Frazier,* 126 So.2d 800 (La.App. 2d Cir.1961) (court holding that evidence, including wording of instrument itself, established donation as gratuitous). The court was there called upon to determine whether a donation of certain property from Mr. and Mrs. John Duhe Frazier to their daughters was gratuitous or remunerative. The donation in question provided in pertinent part:

[I]n recognition of the personal care and affection the said daughters have and do entertain for them, and further, that in order the said daughters may obtain equal advancement and gifts as appearers have heretofore accorded their other children, they do by these presents give, grant, alien, confirm and donate inter vivos unto the said [daughters] ...

*Id.* at 802. Opponents of the donation asserted that it was gratuitous and therefore null because the donor reserved a usufruct over the property in question. In resolving this issue, the court observed, "Where the validity of a remunerative donation is questioned, the burden rests upon the opponents to prove that the value of the property donated exceeds by one-half the value of the services rendered, or to show the donor has not reserved enough for his subsistence." *Id.* (citing *Whitman v. Whitman, supra* ).

It is significant that the *Whitman* case was relied upon for allocation of the burden of proof in *Placid,* because as the *Placid* court observed, the instrument in question "[did] not connote an act of remission or payment." *Id.* at 804. Thus, under the approach taken in *Placid,* even where a donation does not on its face conclusively reflect payment of services rendered or the imposition of charges upon a donee sufficient to support a finding that the donation is remunerative or onerous, the burden will nonetheless rest upon the party challenging the nature of the donation to establish that it is neither remunerative nor onerous.

In *Succession of Hodge,* 424 So.2d 363 (La.App. 2d Cir.1982), the court likewise observed that the burden of proof rests upon the party challenging a donation as invalid because the value of the thing given exceeds by one-half the value of charges, in the context of a dispute over who owned certain funds. In that case, a succession administrator sued to recover certain funds in a savings account allegedly given to the decedent by onerous donation not in writing. If the donation of the account were found gratuitous, the absence of a written

act would have voided the donation. However, it was not ultimately disputed that the account was transferred to the decedent with the charge of taking care of the donor's mother, and the opinion does not mention any evidence that the value of the donation exceeded by one-half the value of the charge. Accordingly, a valid onerous donation was found.

Placing the burden of proof upon the party challenging the gratuitous nature of a donation is not affected by *Maleig v. Maleig,* 435 So.2d 496 (La.App. 4th Cir.), *writ denied,* 441 So.2d 765 (La.1983), wherein the burden of proof question was addressed in the context of an action by a donor to have a donation of immovable property declared null under Article 1497, which provides for the nullity of donations inter vivos where the donor does not reserve to himself enough for his sustenance. Plaintiff contended the donation was purely gratuitous, whereas defendant asserted the donation was made in remuneration of his years of continuous maintenance of the property. The court there observed the donee must prove he has rendered the services before a remunerative donation can be found. 435 So.2d at 502. However, under *Maleig,* once the donee proves the services have been rendered, the burden of proving the test of Article 1526 has not been met is on the party attacking the donation. *See id.* (citing *Placid Oil v. Frazier, supra,* and other cases). The *Maleig* court simply held that the plaintiff did not meet this burden of proof.

In sum, as to any donations facially reflecting the imposition of any "charge" whatsoever or an intent to recompense services,[6] the plaintiff herein will bear the burden of proving that the charges or services are insufficient to render the donation onerous or remunerative. As to any donations reflected in instruments that do not recite any obligations, charges, duties, undertaking or recom-

pense, the Court will call upon the defendants to provide evidence that the donations in question either entailed a charge or were given in consideration of services rendered. The burden will then shift to the plaintiff to establish the insufficiency of such charges or services.

In reaching this conclusion, the Court declines to adopt an automatic rule for inclusion or exclusion of donations in the active mass. No across the board rule requiring inclusion of charitable donations in computing the active mass is required by *Loyola University v. Deutsch,* 483 So.2d 1250 (La.App. 4th Cir.), *writ denied,* 488 So.2d 690 (La.1986), wherein the court expressly noted the absence of any evidence of "any charges, conditions or burdens attached to decedent's charitable inter vivos gifts so as to classify them as onerous." 483 So.2d at 1251 (terms of donations not indicated). Defendants similarly find support for a contrary across the board ruling in *Thompson v. Societe' Catholique D'education Religieuse Et Litteraire,* 157 La. 875, 103 So. 247 (1924), wherein the court addressed the character of a particular donation for assessment whether the donation violated Article 2404, governing inter vivos conveyances of immovable property. The court upheld the onerous nature of the donation on an exception of no cause of action, after reviewing the petition and the instrument. *Thompson* is certainly persuasive of the proposition that recitals in any similar act of donation, imposing various conditions and burdens on the donees, would render a donation onerous.[7] However, this Court will not automatically foreclose a plaintiff challenging such a donation from putting on evidence that the charges were insufficient to support the onerous nature of the donation.

In any event, the Court does not find any great practical distinction in the allocation of the burden of proof in this case. For

---

**6.** The Court has purposefully avoided use of the term "consideration" for reasons relevant to other aspects of the Court's rulings on the donation issues, all as explained later in this Order and Reasons.

**7.** *See also Symposium,* 45 La.L.Rev. 747, 800 (1985).

example, although plaintiff has accurately cited several cases in which as a general proposition courts placed the burden of proof upon the donee to show that certain donations were in fact onerous or remunerative, the donations in some such cases were not reduced to writing to facilitate ascertainment whether the donations purported to state any charge or intent to recompense services. *See, e.g., Osterland v. Gates*, 391 So.2d 855, 861–62 (La.App. 3d Cir.1980), *aff'd in part and rev'd in part on other grounds*, 400 So.2d 653 (La.1981). In other cases, although the acts of sale conveying property recited consideration, it was admitted that the stated consideration was not exchanged, so taking evidence was necessary to evaluate arguments that the conveyances were in fact remunerative donations. *See, e.g., Maleig v. Maleig, supra*, 435 So.2d at 500; *Sauce v. Williams*, 434 So.2d 613, 615 (La.App. 3d Cir.1983); *Fenger v. Cagnolatti*, 292 So.2d 901, 902–03 (La.App. 4th Cir.1974). Moreover, where an act of donation is ambiguous, parole evidence will be used to resolve the question whether a donation was gratuitous or onerous.[8]

■ This Court having indicated its unwillingness to apply any rule of automatic characterization of donations as gratuitous or onerous and having further indicated how the burden of proof shall be allocated, there remains the legal question raised by plaintiff whether the consideration or value necessary to render charitable donations onerous must be shown to flow between the donor and the donee alone. The defendants frame the issue slightly differently, inquiring whether benefits accruing to the advantage of third parties may be considered in assessing whether a particular donation is onerous in character. For the following reasons, the Court would answer the first question in the negative and the second affirmatively.

In evaluating whether a donation is onerous or remunerative, the Code requires evaluation of (1) whether the donation is burdened with charges imposed on the donee or (2) whether the donation compensates services rendered. The code articles nowhere employ the term "consideration," and many of the opinions discussed above are careful to evaluate donations in terms of the "charges" or "services" in question, as those are the focal concerns of Articles 1523 through 1526.[9] Accordingly, the Court does not deem itself limited by the more properly common law concept of "consideration" flowing between two parties to a contract and thus does not believe there must be an equivalent exchange of items of value between the donor and donee. The issue is whether any obligations or "charges" whatsoever imposed on the donee are of sufficient value to satisfy the requisites of Article 1526. It is irrelevant whom the donation benefits under such circumstances, nor in the Court's view, does the Code require that the charges in question benefit the donor, monetarily or

8.  *See Mobley v. Lee*, 318 So.2d 631, 634 (La.App. 3d Cir.1975). The act of donation read in pertinent part as follows:
    [The donor] declares ... that in consideration of the love and affection which she bears for her niece, ... and for her personal care, she does by this act and these presents irrevocably give, grant, confirm, donate and deliver, unto her said niece ... the following described property....
    The court found it unclear to whom the phrase "for her personal care" related. *Id.* At issue in that case was whether a purported revocation of the donation in question was effective. If the donation was gratuitous, the revocation would be of no effect; if it was remunerative, the revocation would have been effective. The court did not comment who bore the burden of proving whether the donation was remunerative or gratuitous; the only apparent rule of construction applied by the court was that the donation should be construed so as to uphold it. *See id.* (act of donation held ambiguous and therefore gratuitous, so as to render revocation ineffective and construe donation in favor of donee).

9.  The Court's interpretation of these code articles is supported by the wording of their source articles in the Civil Code of 1825, which utilize the French "charges", denoting instructions or the imposition of any undertaking or of an onerous obligation providing an occasion for incurring expenses. (*See* Petit Larousse illustre').

otherwise.[10] The charges imposed may incidentally benefit third parties; the services recompensed may be rendered to a third party. No authority cited to the Court requires a contrary holding, particularly when departure from a straightforward application of the Code articles in question would frustrate the clear intent of the donor.

Nothing in the foregoing conclusions affects exclusion from the active mass of any donations of real estate to religious entities where over thirty years of continuous possession has occurred. *See* LSA–RS 9:2321 (West 1965).[11]

## 2. *Valuation of Immovable Property*

■ The parties disagree as to the proper method of valuing certain real property donations by Mrs. Zemurray during her lifetime. Each seeks differing interpretations of Louisiana Civil Code Article 1505, requiring valuation of the property for collation purposes "in the state in which [the property] was at the time of the donation." Plaintiff contends valuation must occur as of the deceased's date of death and must take into account changes which have occurred, not only in the donated property itself, but in the surrounding lands, since the date of donation.

Defendants agree that valuation must occur as of the date of the donor's death; they disagree only with plaintiff's valuation method. Defendants urge that valuation of property "in the state in which it was at the period of donation," mandates consideration of the areas surrounding the donated property; thus, no post-donation changes in the character of the surrounding lands should be taken into account during the valuation process.

10. *See also* Aubry & Rau, *Droit civil francais*, § 684 at p. 213 (Lazarus transl. 1971) (discussing calculation of the active mass as excluding "charges imposed by the deceased on the donee for the benefit of the donor or of a third person").

11. This statute was amended in 1984 to quiet title where only ten years continuous possession

This issue was addressed in *Succession of Simms*, 371 So.2d 272 (La.App. 3d Cir.), *writ denied*, 374 So.2d 656 (La.1979). In that case, the court was presented with several different valuation figures which resulted from the utilization of varying methods of valuation. The proper valuation was declared to be that which examined both the donated property and its surrounding land in the state in which they were at the time of donation. 371 So.2d at 280–81.

The Court finds this interpretation of Article 1505 persuasive and adopts it as the only fair valuation method. However, the Court will also consider any increases in the value of the donated property due to inflation and other factors not directly connected to improvements to the surrounding area, including ordinary market forces. No controlling authority requires a contrary result. Accordingly, the donated property will be valued in the state in which it was at the time of donation, ignoring any post-donation changes in surrounding lands.

## 3. *Valuations of Donations of Money*

■ The parties disagree as to the manner of collating certain cash dispositions made by Mrs. Zemurray during her lifetime. Defendants propose the addition of an inflation factor to those sums actually donated by Mrs. Zemurray. Plaintiff contends that the addition of this inflation factor is unwarranted in Louisiana law. Plaintiff correctly notes that Louisiana courts engaged in the collation process consistently utilize the face value of cash gifts, and this Court finds the face value assessment appropriate. *See, e.g., Succession of Gomez*, 226 La. 1092, 78 So.2d 411 (1955); *Succession of Delaune*, 154 So.2d 65 (La. App. 1st Cir.1963).

has occurred, confirming what this Court perceives as a comparatively recent trend allowing broader latitude to effect the intent of a donor either making charitable contributions and/or settling property in trust. *See, e.g.,* LSA–RS 9:2331 (West Supp.1986); LSA–RS 9:1841 (West 1965).

The Court does not find persuasive the defendants' argument that the addition of an inflation factor is necessary in order that the cash gifts will bear the same proportionate relationship to the active mass that the donation originally bore to the donor's patrimony.

### 4. The Trust Issues

The Court has grouped together for resolution the various issues concerning the effect of certain trusts, established for the benefit of the Zemurray descendants, upon calculation of the active mass of the decedent's estate and credits towards the plaintiff's legitime. As will be discussed more fully below, the Court concludes (a) Louisiana law shall be applied to all issues concerning the effect of the trusts and calculation of the active mass and credits towards the legitime; (b) the active mass shall not include the value of property originally placed in the trusts, but trust principal from the 1945 and 1948 trusts shall be included in the active mass and shall be valued by computing the date of death value of the property actually held in trust on the date of death [12]; and (c) plaintiff shall credit towards his legitime all distributions of income and principal from the trusts in question made prior to the decedent's death and the present value of all donations inter vivos of the right to receive future income as advances on his legitime.

The stipulations of the parties reveal that the trusts in question were created during 1935 to 1948 through agreements of trust of movable property executed out of state by the decedent and her husband during their lifetimes. The trust documents reflect the grantors' status as Louisiana domiciliaries at the times the trusts were established, and the stipulations further reflect the continued Louisiana domicile of all beneficiaries except the plaintiff.

The 1935 trusts, including one created for the benefit of plaintiff's father, were executed in New York, designating New York domiciliaries as trustees. In 1963, plaintiff received the assets of that trust in the amount of over $900,000, by which time he had received approximately $11,000 in income distributions. Prior to the decedent's death, plaintiff also received the assets of his sister's grantor trust, formed from her share of the 1935 trust, which assets approximated $900,000.

The 1945 and 1948 trusts were executed in Massachusetts, designating Massachusetts based trustees. From the 1945 trust established directly for the benefit of the plaintiff, plaintiff has already received sizeable income distributions [13], but no distribution of principal. Plaintiff has received income from one of the 1948 trusts [14], also referred to as a 1948 subtrust, since 1978, although plaintiff has received no distribution of principal.

The trusts when established during Mrs. Zemurray's lifetime granted the Zemurray heirs rights to substantial future income,

---

**12.** The comparative values of the trust assets are as follows:

| | Value * of property originally placed in trust at time of donation | 1979 † value of property originally placed in trust | 1979 value of property held in trust in 1979 |
|---|---|---|---|
| 1948 trusts | [not provided] | $6,701,459 ** Stipulation 67 | $4,968,863 Stipulation 67B |
| 1945 trusts | $449,000 500 shares stock Stipulations 81–84 | $492,682 Stipulation 86 | $1,719,934 Stipulations 93A, 94A, 95A, 96A |

* Decedent's share  † Date of death
** Property held in trust in November 1961 when the trusts became irrevocable

**13.** The parties' stipulations show that plaintiff received $81,642 from the 1945 trust created for his benefit as of 1979, with an additional $379,200 income received from 1980 through 1984. From the 1945 trust created for his sister, plaintiff received $413,520 as of 1979, with an additional $190,160 from 1980 to 1984.

**14.** From his sister's 1948 subtrust, plaintiff received $421,715 as of the decedent's death, with an additional $359,070 received from 1980 to 1984. From his own subtrust, plaintiff received $102,320 as of the decedent's death, with an additional $405,884 received from 1980 to 1984. Other trust income was also received by the plaintiff, and the Court has not at this juncture attempted to compute or estimate the present value of plaintiff's rights to future income.

which plaintiff shall enjoy for the remainder of his life.[15]

(a) Louisiana law shall apply.

■ Against this general factual background, plaintiff seeks application of Louisiana law, which this Court interprets as requiring inclusion of trust principal in the active mass under the circumstances of this case. Defendants seek application of Massachusetts law as the situs of the trust, which law defendants contend would permit exclusion of trust principal from the active mass.

As a court sitting in diversity, this Court is obligated to apply state conflict of law rules. Plaintiff urges application of Louisiana law under Civil Code Article 10, presumably on grounds that the donations in question, although passed out of state, are to have effect here. The Court also recognizes the judicial adoption of interest analysis for resolution of conflict of laws issues in *Jagers v. Royal Indem. Co.*, 276 So.2d 309 (La.1973). Under either approach, the Court would apply Louisiana law.

The Court acknowledges that a nonresident plaintiff is here claiming the benefits of Louisiana forced heirship laws enacted for the protection of Louisiana heirs, where his invocation may defeat the intent of donations made by a Louisiana decedent for the benefit of certain Louisiana charitable foundations. Nevertheless, the Louisiana based interests in this case predominate, and Massachusetts is certainly not interested in the protection of either the decedent, the charitable foundations or any of the parties. These considerations would call for application of Louisiana law. *See id.* at 312. The Court is also persuaded by the unnecessary complexity that would ensue from application of principles of depecage to this case.

In making this determination of the applicable law, the focus is most properly placed not upon whether the trusts were valid, which does not appear to be in question, but how those trusts affect orderly settlement of a Louisiana succession. *See*

*also Succession of Velasquez-Bain,* 471 So.2d 731, 749 (La.App. 4th Cir.), *writ denied,* 476 So.2d 354 (La.1985) (law of decedent's domicile governs disposition of his movable property). Moreover, any seeming inequity resulting from effectively disregarding the establishment of the foreign trusts by including them in the active mass can be balanced by recognition of the sizeable benefits plaintiff has obtained from the trusts whose distributions he wishes to ignore for purposes of calculating credits against his legitime. The Court is astounded by plaintiff's suggestion that the Court should disregard the millions of dollars plaintiff received from the trusts in question and the donation of the right to receive millions more in the future, made during the lifetime of the decedent when the decedent was under no obligation to make any donation whatsoever to the plaintiff.

Accordingly, the Court has readily concluded that Louisiana law applies to all trust issues. This conclusion is particularly appropriate in light of the ease with which assets can be transferred from state to state at the present time, calling in to question the continued vitality of *Hullin v. Fauré,* 15 La.Ann. 622 (1860), upon which defendants rely for the proposition that the law of the trust situs applies to any issues concerning a trust.

(b) The active mass shall not include the value of property originally placed in trust, but shall include the date of death value of property actually held in trust at the date of death.

■ The plaintiff analogizes settling a trust to making a donation at the time the trust becomes irrevocable. Under this approach, the property placed in trust would be collated as an inter vivos donation to calculate the active mass under the principles of Article 1505.[16] Defendants contend persuasively that the property was never donated, due to the decedent's exercise of effective control over the property through the trusts.

---

**15.** See Stipulations 72 and 89.

**16.** Article 1505 is quoted on page three of this Order and Reasons.

One can take judicial cognizance of the fact that although a trustee of trusts, as are at issue in this case, is not bound in any way by the wishes of the settlor, the settlor is in a position to suggest to a trustee matters regarding the trust estate. Thus, a settlor of a trust such as these can and usually does influence activity of the trust estate. The trust is nonetheless a juridical person, but involves a balance [17] between indiciae and benefits of ownership and the insulation of property through establishment of a distinct legal entity to assist in preservation and control of the property.

Defendants' argument is therefore attractive because it entails a recognition of the realistic control exercised over trust property. Thus, at the time of death, the decedent's patrimony would include her share of the property held in trust, which is consistent with defendants' alternative argument, that if any trust principal is collated, only the date of death value of the trust corpus should be collated.

In reaching these conclusions, the Court finds well founded the defendants' contention that "property" in Article 1505 should not be narrowly construed, but rather should include consideration of "all things movable and immovable, corporeal or incorporeal". *See Succession of Pierson,* 339 So.2d 1337 (La.App. 3d Cir.1976), *writ denied,* 342 So.2d 216–17 (La.1977); *Succession of Pierson,* 365 So.2d 507 (La.App. 3d Cir.1978), *writ denied,* 366 So.2d 575 (La. 1979); Aubry & Rau, *supra,* § 684 at p. 213.

The Court does not find the cases cited by the plaintiff for the general proposition that "items actually donated are the items to value in constituting the mass" controlling on the issue whether the settling of a trust should be viewed as a donation with the items actually placed in trust valued to calculate the active mass. *See, e.g., Roach v. Roach,* 213 La. 746, 35 So.2d 597 (1948); *Succession of Hendrick,* 430 So.2d 734 (La. App. 2d Cir.), *writ denied,* 433 So.2d 1053 (La.1983) and others cited on page 31 of Plaintiff's Memorandum of September 27, 1985.

Accordingly, the active mass should include the date of death value of any property then held in trust together with the date of death value of donations of all incorporeal rights made to the plaintiff during the decedent's lifetime, which in this case, include the very sizeable benefits conferred by plaintiff's income interests in the various trusts in question.

(c) Trust distributions already received and the date of death value of the right to future income shall be credited to plaintiff's legitime.

Defendants correctly distinguish between lifetime distributions of the right to trust income and testamentary dispositions resulting in a right to trust income. The mandate of Louisiana law is clear that where property is held in trust, unless the trust conforms to Louisiana law for placing the legitime in trust, an income interest in a trust will not satisfy an heir's right to his legitime upon the settlor's death, nor would the trust insulate the property from collation in computing the active mass under Article 1505. *See* LSA–RS § 9:1841.

However, the heir's right to the legitime does not accrue until the death of the individual from whom the heir claims his inheritance, a factor which renders clearly distinguishable the cases upon which plaintiff relies to avoid crediting to his legitime his rights to income already received and to be received. *See Sachnowitz v. Nelson,* 357 So.2d 894 (La.App. 1st Cir.), *writ denied,* 359 So.2d 627 (La.1978) (testamentary income interest in trust established); *Succession of Williams,* 184 So.2d 70 (La.App. 1st Cir.1966), *writ denied,* 250 La. 748, 199 So.2d 183 (1967) (testamentary usufruct).

The Court is also persuaded that imputing to plaintiff's legitime the income already received and the right to future income is appropriate in light of plaintiff's

---

17. The Court hopes to achieve this balance by recognition of the complementary effect of Louisiana law, pursuant to which the Court will include in the active mass trust benefits and rights deemed to be advances on the legitime.

receipt of the income interests conferred upon him, assuming pro arguendo that plaintiff's income interests are "less than full ownership of property." An heir's right to full ownership of property arises from Article 1710 of the Civil Code, which states in pertinent part, "[N]o charges or conditions can be imposed *by the testator* on the legitimate portion of forced heirs." (Emphasis added). This prohibition does not apply to inter vivos donations of the type at issue in this case. Moreover, it would not be appropriate to permit plaintiff to receive and make use of distributions from the trusts and at the same time allow him to escape crediting those distributions to his legitime. *See Succession of Harris*, 179 La. 954, 155 So. 446 (1934) (forced heir held to have ratified reducible legacies); *Succession of Quinlan*, 118 La. 602, 43 So. 249 (1907) (forced heir accepting less than full ownership of property conveyed by testamentary disposition).

The foregoing conclusions regarding credits to the legitime are a necessary complement to the Court's determination above that the rights to income shall be included in calculating the active mass. Moreover, as a matter of policy, the Court is absolutely satisfied that its interpretation of Louisiana law best achieves equity in this case, in light of the unique and substantial rights afforded by present day trust law and estate planning.

### Conclusion

The parties have filed various motions for summary judgment, partial summary judgment, and cross motions for summary judgment. To clarify matters and ensure a complete record for any reviewing court, the Court considered the motions as motions in limine and further identified certain issues for decision in its Minute Entry of March 20, 1986. Accordingly, as indicated above, the motions are granted in part and denied in part, the Court having concluded that:

1. Charitable donations made by the decedent will be excluded from calculation of the active mass, if found to be onerous or remunerative, and plaintiff will have the burden of establishing that any donation onerous on its face should not be so considered;

2. In valuing lifetime donations of immovable property as of the date of Mrs. Zemurray's death, the Court will take into consideration changes in the property and its environs in order to value the property in the state in which both the property and its environs were at the time of the donation;

3. No interest or inflation factor will be included in valuing donations of money for purposes of calculating either the active mass or credits against the forced portion;

4. Trust principal will not be included in the computation of credits against plaintiff's legitime, but the plaintiff shall credit against his legitime the value of income received and the right to receive future income;

5. Thus, income distributions from trusts are included in calculating credits against plaintiff's legitime; and

6. For purposes of calculating the active mass, the active mass shall include the value of property held in trust as of the date of the decedent's death and the value of plaintiff's income interests in the trusts.

However, the aforesaid is a brief summary of the Court's determinations of the issues presented and the opinion will take precedence over this summary in the event of any perceived variance between these conclusions and the matters set out in full above.