537 So.2d 736 (1988)
The SUCCESSION OF Mathilda C. JACKSON.[1]
Nos. 87 CA 1531, and 87 CA 1532.
Court of Appeal of Louisiana, First Circuit.
December 20, 1988.
Rehearing Denied February 16, 1989.
Writ Denied April 7, 1989.
*737 David L. Morgan, Jr., New Orleans, for plaintiff-appellant.
Iddo Pittman, Jr., Hammond, for defendant-appellee.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
These consolidated proceedings involve the succession of Mathilda C. Jackson (decedent) and a petition for collation filed by her adopted son. Before us is an appeal of the dismissal of the petition for collation.
Decedent died testate on January 26, 1985, leaving two forced heirs. Her testament, dated June 10, 1976, appointed her daughter and forced heir, Queenie Jenkins Youngblood, executrix, and bequeathed to her all that was not reserved by LSA-C.C. art. 1493. Ben Jackson, Jr. (plaintiff), the other forced heir and an adopted son, was bequeathed only that portion required by law. See LSA-C.C. arts. 1493 and 1495.
On June 3, 1982, approximately two weeks following a consent judgment between decedent and plaintiff, decedent executed an instrument entitled a "Cash Deed," which purported to make an onerous and remunerative donation to Queenie and her husband, Manley D. Youngblood, of a mortgage note in the amount of $145,950.00 and immovable property on Second Avenue in the City of Hammond. The instrument, an authentic act in conformity with LSA-C.C. art. 1536, recites that the "consideration" for the "sale" was personal services rendered her by the Youngbloods since 1972, and their agreement to render future services for the remainder of her life.[2]
The $145,950.00 mortgage note was paid by a check issued on May 12, 1983, to decedent in the amount of $153,939.26. It was endorsed by her and Manley D. Youngblood. Additionally, a check issued May 28, 1982, in the names of decedent and Iddo Pittman, Jr. (decedent's attorney), in the amount of $77,550.00, was endorsed by the two payees and then Manley Youngblood.
The mortgage note and the $77,550.00 check represent almost all of decedent's portion from the sale of immovable property in Tangipahoa Parish owned by her and plaintiff in indivision. An act of partition of other immovable property as well as this sale of the property owned in indivision resulted from litigation between decedent and plaintiff involving the succession of decedent's husband, plaintiff's adoptive father, Ben Jackson Sr.
The trial court correctly found that the proceeds from the sale and all immovable property were removed from decedent's patrimony prior to her death.
The petition for collation was brought by plaintiff alleging that the "Cash Deed" constituted a donation omnium borum in contravention of LSA-C.C. art. 1497, and an impingement of his legitime in contravention of LSA-C.C. art. 1493.
*738 Manley Youngblood predeceased these proceedings. The petition for collation was brought against Queenie Youngblood and her three children (defendants).[3]
Defendants assert that the donation was onerous and remunerative as provided in LSA-C.C. art. 1524 and 1525, respectively, and therefore not subject to LSA-C.C. arts. 1497 and 1493.
LSA-C.C. art. 1526 provides that onerous and remunerative donations are within the scope of the rules peculiar to donations inter vivos if the value of the donation exceeds by one-half the value of the services remunerated or the onerous charges imposed. More simply stated, the value of the charges and the services (in this case combined because the donation was alleged to be both remunerative and onerous) must equal or exceed two-thirds that of the donation. In re: Succession of Danos, 359 So.2d 679, 681 (La.App. 1st Cir.), writ denied, 362 So.2d 577 (La.1978).
The trial court concluded that neither party proved the value of the services and charges and, because plaintiff bore the burden of proving that the donation exceeded two-thirds the value of the remunerative services and the onerous charges, dismissed the suit.
We agree that the party attacking the remunerative and/or onerous donation bears the burden of proving that it does not meet the LSA-C.C. art. 1526 test. See Jennings v. Goldsby, 480 So.2d 354, 357 (La.App. 3d Cir.1985). But the trial court specifically found that neither party proved the value of the remunerative services and onerous charges.
LSA-C.C. art. 1524 provides:
The onerous donation is not a real donation, if the value of the object given does not manifestly exceed that of the charges imposed on the donee. (Emphasis added.)
LSA-C.C. art. 1525 provides:
The remunerative donation is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift. (Emphasis added.)
The trial court, quoting Maleig v. Maleig, 435 So.2d 496 (La.App. 4th Cir.), writ denied, 441 So.2d 765 (1983), held that the donee need only prove that the remunerative services and onerous charges were performed, and that then the burden of proving that the value of these services and charges does not meet the LSA-C.C. art. 1526 threshold shifts to the party attacking the donation. We believe the trial court's reasoning misinterprets Maleig and is contrary to the plain language of LSA-C.C. arts. 1524 and 1525, for reasons expressed hereinafter.
Maleig involved a remunerative and onerous donation of immovable property which the donor, Mrs. Maleig, sought to annul as prohibited under LSA-C.C. art. 1497. She had made the transfer to her son, Calvin Maleig, pursuant to an "Act of Credit Sale" for a recited cash consideration of $106,516.68. The property consisted of the Maleig family home, in which the donor lived at the time of the transfer, and eight double rental units on two adjoining lots. Calvin had performed much of the construction of these rental units, and, where skilled journeymen were required, Calvin assisted these men in order to reduce costs. Calvin's father died in 1958. Only four of the rental units had been constructed at this time, with Calvin, his father, and his uncle having performed much of the work themselves. Calvin constructed the additional units over a period of time, performing the plumbing work himself. Additionally, after the death of his father, Calvin was responsible for their maintenance and many of the repairs. In 1975, Calvin began to manage the rental units as well because his mother's mental condition was deteriorating.
The donation was made in 1971. Mrs. Maleig filed suit to rescind the donation in 1978. Her testimony at trial was "unresponsive and generally incoherent." Maleig, *739 435 So.2d at 500. Her physician testified that she had reached an advanced state of senility. Id.
The court in Maleig determined that Calvin had proven he had rendered services for his mother "which were valuable and appreciable in money, and has also proved the extent of those services...." 435 So.2d at 502. The court implicitly found that Calvin had proven the value of his services was "little inferior" to the value of the portion of the donation that was remunerative and that the value of the remainder did not "manifestly exceed" the onerous charges.[4]See LSA-C.C. arts. 1525 and 1524.
Here, the trial court explicity found that the donation was remunerative and onerous but dismissed the suit because neither party proved the value of the remunerated services and onerous charges. The trial court erroneously assumed that any performance of services or charges on the part of the donee satisfies LSA-C.C. arts. 1525 and 1524, respectively, and that upon the donee's having proved such performance, the burden of proving that the value of the services and charges does not meet the LSA-C.C. art. 1526 threshold, shifts immediately to the party attacking the donation.
A donation is not onerous if the value of the gift manifestly exceeds that of the charges. LSA-C.C. art. 1524. A donation is not remunerative if the services recompensed are more than little inferior to that of the gift. LSA-C.C. art. 1525. If any performance would suffice, the language in each of these codal articles that requires comparison of the value of the gift to the value of the services would be meaningless.
The burden of proving that a donation has been made is initially on the donee. See Pardue v. Turnage, 383 So.2d 804 (La. App. 1st Cir.1980). There are three kinds of donations: gratuitous, onerous, and remunerative. LSA-C.C. art. 1523. Donations inter vivos cannot exceed the donor's disposable portion. LSA-C.C. art. 1493. Donations inter vivos cannot divest the donor of the entirety of his patrimony. LSA-C.C. art. 1497. If the donation is remunerative and/or onerous, under the express language of our Civil Code, a party asserting that these rules, applicable generally to donations inter vivos, apply to the remunerative and/or onerous donation, must prove that the donation fails to meet the mathematical test articulated in LSA-C.C. art. 1526. However, where there is no evidence whatsoever that remunerated services are little inferior in value to the gift, or that the value of a donation does not manifestly exceed the value of onerous charges imposed upon the donee, the trial court need not make any determination under LSA-C.C. art. 1526. In order to reach the LSA-C.C. art. 1526 test, the donation must pass the LSA-C.C. art. 1524 and/or art. 1525 tests. Laws in pari materia must be interpreted with reference to each other. See LSA-C.C. art. 17 (repealed and reanacted by Acts 1987, No. 124, § 1, see now LSA-C.C. art. 13). If all that were required of the donee would be proof that remunerated services and/or onerous charges had been performed to place the burden of proof under LSA-C.C. art. 1526 upon a party attacking the donation, then the language of LSA-C.C. arts. 1524 and 1525 is superfluous.[5]
*740 The trial court found that defendants did not prove the value of the services. In fact, Queenie Youngblood's testimony was somewhat vague in this regard: she testified that decedent lived with her and Manley; that she chauffered decedent around and cooked for her; and that decedent often needed assistance in bathing. She testified as well, however, that decedent was mentally very sound and needed no assistance in managing her personal finances.
The value of the immovable property and the mortgage note transferred in the cash deed approached $200,000.00. In addition, checks in amounts of $77,550.00 and $2,303.84 were transferred. The circumstances of these transfers were not proven beyond evidence presented by plaintiff that the $77,550.00 check was endorsed by the two payees, decedent and Iddo Pittman Jr., and then by Manley Youngblood, and that the $2,303.84 check was endorsed by decedent and Manley Youngblood. The value of the alleged donations, therefore, greatly exceed $200,000.00.
The trial court erred in its determination that these donations were onerous and remunerative after it specifically found that defendants had not proven any value of their services. The LSA-C.C. art. 1526 burden of proof should not have been imposed upon plaintiff prior to defendants having proved that the donations were, in fact, remunerative and onerous.
We are unable to determine from the record the value of the services and charges. In the interest of justice, we remand the matter to the trial court for an evidentiary hearing as to the value of the charges and services. Although the exact value need not be determined in order to satisfy the non-mathematical standards of LSA-C.C. arts. 1524 and 1525, a specific value should be determined. The conclusion, after the introduction of evidence as to the value of the services and charges, that the donation does not meet this initial test, obviates any determination as to LSA-C.C. art. 1526. We believe, however, that to the extent the value of the services and charges is proven, there exists a valid remunerative and onerous donation. LSA-C. C. art. 1513 and 1514; see Succession of Hodge v. Nance, 424 So.2d 363, 366 (La. App. 2d Cir.1982). That part of the donation that exceeds the value of the services and charges is subject to the rules applicable to donations inter vivos, generally, including LSA-C.C. art. 1493.[6]
For the reasons expressed, the judgment of the trial court is reversed, and this matter is remanded for for further proceedings consistent herewith. Costs will be assessed after final disposition of the matter.
REVERSED AND REMANDED.
NOTES
[1] We note that the pleadings in the record show this name to be spelled "Mathilda." but on the documents decedent signed, she spelled it "Matilda."
[2] Additional such consideration is an agreement to pay future burial and funeral expenses. This appears to be a nullity pursuant to LSA-C.C. art. 1530, but was not raised as an issue in the proceedings below.
[3] We pretermit any discussion of the propriety of an action in collation against the children. See LSA-C.C. art. 1236.
[4] In Maleig, as in the case at bar, the donation was both remunerative and onerous. The non-mathematical tests of LSA-C.C. arts. 1524 and 1525 are not worded the same, and, in fact, one directs our attention to the value of the charges, see LSA-C.C. art. 1525, while the other focuses on the value of the donation, see LSA-C.C. art. 1524. We find that the test is, for practical purposes, the same: if the value of an object given manifestly exceeded that of onerous charges imposed, that same disparity, in the context of remunerated services rendered, would not meet the "little inferior" test in LSA-C.C. art. 1525.
[5] Cf., Zemurray v. Whitney National Bank of New Orleans, 642 F.Supp. 890, 895 (E.D. of La.1986), (holding that when the act of donation "facially [reflects] the imposition of any `charge' whatsoever or an intent to recompense services," the party attacking its validity bears the burden of proving that the charges or services are insufficient.) This interpretation of LSA-C. C. arts. 1524 and 1525 entirely disregards the language in those two codal articles that says an onerous donation or a remunerative donation is not a real donation only if "the value of the object given does not manifestly exceed ... the charges" or "the value of the services ... are little inferior to that of the gift."
[6] We note also for purposes of the remand that the $77,550.00 check from Rodney C. Cashe and the $2,303.84 check from David L. Morgan on behalf of plaintiff for his share of estate property taxes between the years 1976 and 1981, were not included in the "cash deed" act of donation. The donation inter vivos of these two instruments is effective without any formality beyond the negotiation of same. LSA-R.S. 10:3-201(4) and 202(1). However, while Louisiana's law of Commercial Paper controls as to the requisite form, the substantive codal provisions relative to the validity of donations inter vivos remain applicable. Succession of Jones, 505 So.2d 841, 844 (La. App. 2d Cir.1987). Additionally, the donor must still prove donative intent. (La. App. 1st Cir.1984). On remand, the trial court should determine whether, as to these two items, defendants proved that decedent intended to make a donation.