505 So.2d 841 (1987)
SUCCESSION OF Irene Belanger Barnes JONES.
No. 18521-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
*842 Roy L. Brun, Shreveport, for plaintiff/appellant A.G. Alexander, Jr.
Pugh & Pugh by Robert G. Pugh, Shreveport, for defendant/appellee Wanda Poche.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
JASPER E. JONES, Judge.
This is an appeal of a judgment rendered in a Rule to Show Cause why funds transfered by the decedent by check should not be returned to the estate. The plaintiff-appellant is the testamentary executor of the estate of Irene Belanger Barnes Jones. The defendant-appellee is the recepient of the funds, Wanda Poche.

FACTS
On or about March 22, 1985, Irene Belanger Barnes Jones was diagnosed as having terminal cancer. Mrs. Jones had incurred hospital bills and other medical bills in connection with this illness prior to this diagnosis. On April 5, 1985, she issued a check in the amount of $5,000 payable to Wanda Poche. The cancer diagnosis was confirmed on April 12, 1985. Ms. Jones was admitted to the hospital on May 6, 1985, and remained there until her death on June 8, 1985. Her last will and testament directs *843 the executor to pay all just debts and expenses of last illness.
By the Rule to Show Cause the plaintiff alleged, in relevant part, that Wanda Poche was the decedent's agent whose duties were to pay various bills associated with the decedent's illness and that said agency terminated upon the principal's death. The plaintiff asserted that Wanda Poche owed the estate an accounting on how the funds were expended as well as the balance remaining.
At the hearing on the rule Wanda Poche testified she was the decedent's landlady and close friend for eighteen years. She had not increased the decedent's rent of $70.00 per month during the length of their relationship. The amount of the rent was far below the market price. For two years before Mrs. Jones' death Mrs. Poche had taken the decedent shopping each week and otherwise generally looked after her needs. Mrs. Poche took days off from her job at a loss of compensation to do things for the decedent. Wanda Poche related that the decedent gave her the $5,000 check as a "gift" for her benevolence through the years. She also related that the decedent issued her two other checks at that time. One was for reimbursement for cost of cat food and for payment of accrued utility bills. The other was for two months rent that was due and owing. Wanda Poche added that the $5,000 check was accompanied by a "stipulation" that she: (1) file the decedent's Medicare and insurance papers; and (2) pay any balances due from the amount of the check after collecting Medicare benefits. Wanda Poche concluded by asserting she was a Medicare specialist with twelve years experience and had cashed the check. She added that the money was in a safe in her home and she was willing and ready to pay any Medicare deficit but related she did not know the amount of this deficit as the plaintiff had written a letter telling her not to pursue it.
The plaintiff testified and corroborated the long relationship between Wanda Poche and the decedent and acknowledged he did not handle any Medicare matters for the decedent. He related his aunt, the decedent, told him she had given Wanda Poche a sum of money to pay bills. He also related that he had received only one bill from the hospital, in the amount of $66.00, and had assumed there were no expenses outstanding as Wanda Poche was supposed to be paying them.
The plaintiff argued that as possession of the transferred funds had been established, the burden shifted to Wanda Poche to prove by clear and convincing evidence that it was a gift. The defendant responded by asserting that as the check was a negotiable instrument, then LSA-R.S. 10:3-201(4)[1] superseded any other legal requirements. The plaintiff countered by asserting that the underlying validity of the donation is a "threshold" requirement that is not superseded by the Commercial Law. In particular, the plaintiff cited LSA-C.C. *844 art. 1530[2] as a possible defect negating the existence of a valid donation as Wanda Poche was obligated to pay debts that were not ascertainable prior to the issuance of the check.
The trial court ruled that the Commercial Law was specific legislation that superseded the more general codal articles. The court also held that the record established by clear and convincing evidence that the $5,000 check was a "gratuitous thing" given because Wanda Poche's past acts of kindness. The court found the law and evidence in favor of defendant and rendered judgment dismissing the rule.
The plaintiff has appealed. The sole assignment of error presents the following issue for decision: Did the trial court err in ruling that LSA-R.S. 10:3-201(4) supersedes LSA-C.C. art. 1530 so that the donation is valid and the funds are not required to be returned to the estate?
We affirm the judgment on grounds other than those relied upon by the trial court and remand the matter so that the amount of any Medicare deficiency existing as of April 5, 1985, can be determined and paid to the decedent's estate.
Initially we note the trial court was wrong in holding that LSA-R.S. 10:3-201(4) supersedes the Louisiana Civil Code in regard to any possible legal defect which may underlie an apparent donation of a negotiable instrument. It is evident that the Commercial Law is controlling only insofar as the form is concerned. Title of the legislative act creating the exception to the application of the code article to the Commercial Law reflects that the act provides for donations inter vivos to be construed by Chapter 3, Title 10, of Louisiana Revised Statutes of 1959 (law on commercial paper), rather than the civil code, "on the form of the donation." The same wording is found in the body of the statute. LSA-R.S. 10:3-201(4)[3]. The provisions of the statute do not expressly provide that all codal provisions on donations are to be replaced. Cf., LSA-R.S. 10:1-103.[4] This act overruled the supreme court decision of Succession of Miller, 405 So.2d 812 (La. 1981), which held the donation of bearer bonds by delivery was invalid because the donation failed to comply with the provision of LSA-C.C. art. 1536 which required donations of incorporeal movables be in the form of an act before a notary public and two witnesses.[5] See also, Succession of Payne v. Pigott, 459 So.2d 1231 (La.App. 1st Cir.1984). In this case the court held that the provisions of the Louisiana stock transfer legislation (LSA-R.S. 10:8-101 et seq.) controlled the form required for stock donations but the provisions of the civil code remained applicable to provide the *845 substantive rules affecting the validity of the donation. We conclude the donation of the check in this case is controlled by the substantive rules on donations contained in the civil code.
The trial court was also incorrect in classifying the transfer as a gratuitous donation. The stipulations accompanying the $5,000 check, as well as the underlying benevolent motive, induced by rent far below market value supplied by Mrs. Poche to Mrs. Jones for 18 years and two years of errand running service supplied by Mrs. Poche for Mrs. Jones following the death of Mrs. Jones' husband, all compel the conclusion that it should have been construed as an onerous and a remunerative donation. Victorian v. Victorian, 411 So.2d 473 (La. App. 3d Cir.1978).
The true issue in this appeal is to determine if the transaction is valid whether it be analyzed in accordance with the rules applicable to inter vivos donations or construed by the rules applicable to contracts in general. We conclude the transaction was legally valid, whichever method is used to interpret it.

LAW ON ONEROUS CONTRACTS AND ONEROUS AND REMUNERATIVE DONATIONS
"A natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance." LSA-C.C. art. 1760. "A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed. A contract made for the performance of a natural obligation is onerous." LSA-C.C. art. 1761. "A contract is onerous when each of the parties obtains an advantage in exchange for his obligation." LSA-C.C. art. 1909. The presence of a gratuitous intent to perform a service gives rise to a natural obligation. Martin v. Bozeman, 173 So.2d 382 (La.App. 1st Cir.1965).
A gratuitous donation inter vivos is made without condition and merely from liberality. LSA-C.C. art. 1523.[6] Donations are both onerous and remunerative when it is burdened with charges and is made to recompense for services rendered. Victorian v. Victorian, supra. The rules applicable to donations inter vivos do not apply to onerous and remunerative donations except when the value of the object given exceeds by one-half that of the charges or of the services. LSA-C.C. art. 1526.[7] Conversely, where the value of the charge or service exceeds 2/3 of the value of the gift, the transfer is not a true donation. Averette v. Jordan, 457 So.2d 691 (La.App. 2d Cir.1984).
Is the $5,000 transfer valid?
The appellant argues that the $5,000 transfer from the deceased to Wanda Poche was made on the condition that future Medicare debts and charges be paid out of the funds. As such, LSA-C.C. art. 1530 mandates the conclusion that the entire transfer, as an attempt at a donation inter vivos, is null. It is also asserted that LSA-R.S. 10:3-201(4) does not totally supersede the Louisiana Civil Code Articles on donations and the possible existence of an underlying substantive legal defect in the donation is a valid "threshold test" to determine the validity of the donation before considering that the donation, by delivery of a check, complies with the commercial law requirements on form.
For the previously related reasons, we agree that such a "threshold test" is appropriate *846 even where the form of the transfer is governed by the Commercial Law. However, appellant's position is premised upon the transfer being governed by the rules applicable to inter vivos donations. This position assumes: (1) that the value of the services rendered and charges imposed are not greater than 2/3 of the value of the gift; and (2) that the deceased intended Wanda Poche to pay Medicare bills as they accrued and became ascertainable in the future and the donee was to keep the remainder as a gift after present and future debts are paid. Whether the transaction is analyzed under the rules applicable to donations or under the rules concerning contracts in general, we conclude the transfer itself is valid and that the only issue is the amount of any Medicare deficit is due the decedent's estate as of the date of the transfer.
Assuming the analysis is to be made under the codal articles applicable to donations inter vivos for the reason that the value of the charges and services rendered are not greater than 2/3 the value of the gift, and for this reason does not trigger the exclusion of the application of the rules on inter vivos donations pursuant to LSA-C.C. art. 1526, we find, for the following reasons, that the legal impediment of the validity of the donation contained in LSA-C.C. art. 1530 is not applicable. The deceased issued two other checks to Wanda Poche at the time she gave her the $5,000 check. Both of these other checks reflect reimbursement or payment of accrued obligations. The deceased did not expressly specify that any future medical expenses were to be paid out of the "gift" as they accrued. We note it did not become necessary for her to be admitted into a hospital again until May 6, 1985, approximately one month later, and this circumstance makes it improbable that she was thinking about future medical expenses at the time she made the gift. We further note that the decedent executed her last will and testiment April 16, 1985, eleven days after she gave the check gift to Mrs. Poche. In her will she specifically directed that her executor pay the expenses of her last illness. The provisions of the will reads as follows: "Upon my death, my executor shall pay all of my just debts, funeral expenses, expenses of last illness, and burial expenses, including a suitable marker for my grave...." The deceased's instructions to her executor in her last will and testament expressly specified that he pay her just debts and other expenses of her last illness from the assets of her estate. From the totality of the circumstances we conclude the deceased intended Wanda Poche to file the needed papers and pay any accrued expenses due as of April 5, 1985, not covered by Medicare, and that all subsequent expenses should be paid by her estate after her death.
The record does not directly provide evidence of the valuation of the rent donations and benevolent services provided by Wanda Poche to Mrs. Jones over the eighteen year period of her friendship with the deceased, nor of the valuation of the charges for the donee's efforts at filing the needed Medicare documentation. However, this determination is not critical because even if their value would be in excess of the entire value of the $5,000 check, causing the rules on donation inter vivos to be inapplicable, the rules applicable to contracts in general would support the transfer. This would be true because the very cheap rent and other services Mrs. Poche supplied to the decedent over the years of their friendship gave rise to a natural obligation owed by the decedent to Mrs. Poche which would support the $5,000 gift, as the transaction would be categorized as an onerous contract wherein both parties obtained an advantage for their respective obligation. LSA-C.C. arts. 1761, 1909; Victorian v. Victorian, supra.
Mrs. Poche owes the appellant, as a condition of the gift, the amount of Mrs. Jones' medical bills incurred through April 5, 1981, not covered by Medicare. This amount was not determined on the trial of the rule. We remand the case to the trial court and direct that evidence be produced to establish the amount of any deficit after applying to the bill sums collected from Medicare and direct that appellant be *847 awarded a judgment against Mrs. Poche for the amount of such deficit.

CONCLUSION
The judgment is AFFIRMED subject to being amended to award appellant a judgment as per our directions on remand. All costs of this appeal are assessed against the appellant.
NOTES
[1] § 3-201. Transfer: right to endorsement

(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against cannot improve his position by taking from a later holder in due course.
(2) A transfer of an interest created in an instrument by way of security vests the foregoing rights in the transferee to the extent of the interest transferred.
(3) Unless otherwise agreed a transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified endorsement of the transferor. Negotiation takes effect only when the endorsement is made and until that time there is no presumption that the transferee is the owner.
(4) Donations inter vivos of negotiable instruments shall be governed by the provisions of this Chapter, notwithstanding any other provision of the Louisiana Civil Code or any other law of this state relative to the form of donations inter vivos, to the contrary.
In addition, this Paragraph is remedial and retrospective. Any donation inter vivos of a negotiable instrument made on or before the effective date of this Paragraph, in accordance with the provisions of Chapter 3 of Title 10 of the Louisiana Statutes of 1950 or the Louisiana Civil Code or any other law of this state relative to the form of donations inter vivos, is valid. [emphasis added]
[2] Art. 1530. Donation, conditional on payment of future or unexpressed debts and charges, nullity

It is also null, if it was made on condition of paying other debts and charges than those that existed at the time of the donation, or were expressed either in the act of donation or in the act that was to be annexed to it.
[3] No. 452 of 1982
By: Mr. Casey and Representative Gaudin.
AN ACT
To enact R.S. 10:3-201(4), to provide that the donation inter vivos of a negotiable instrument is governed by the provisions of Chapter 3 of Title 10 of the Louisiana Revised Statutes of 1950 rather than the provisions of the Civil Code or other laws on the form of donation, to make effective prior donations of such instruments if done in compliance with the commercial paper law, and to provide for related matters. Be it enacted by the Legislature of Louisiana: Section 1. R.S. 10:3-201(4) is hereby enacted to read as follows:
§ 3-201. Transfer: Right to endorsement
(4) Donations inter vivos of negotiable instruments shall be governed by the provisions of this Chapter, notwithstanding any other provision of the Louisiana Civil Code or of any other law of this state relative to the form of donations inter vivos, to the contrary.
. . . . .
[emphasis added]
[4] § 1-103. Supplementary general principles of law applicable

Unless displaced by the particular provisions of this Title, the other laws of Louisiana shall apply.
[5] Art. 1536. Donation of immovables or incorporeals, form required

An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.
[6] Art. 1523. Gratuitous, onerous and remunerative donations; definitions

There are three kinds of donations inter vivos: The donation purely gratuitous, or that which is made without condition and merely from liberality;
The onerous donation, or that which is burdened with charges imposed on the donee;
The remunerative donation, or that the object of which is to recompense for services rendered.
[7] Art. 1526. Onerous and remunerative donations, when rules applicable

In consequence, the rules peculiar to donations inter vivos do not apply to onerous donations and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the service.