STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1271

LINDA ARANGUREN BALLEX, AS THE TUTRIX OF HER MINOR
CHILD, VERNA MARIA BALLEX

VERSUS

EUGENE BALLEX AND KELLY SPARACIO BALLEX

DATE OF JUDGMENT:     JUL 0 6 2020

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
NUMBER 2014-14533, DIVISION H, PARISH OF ST. TAMMANY
STATE OF LOUISIANA

HONORABLE ALAN A. ZAUNBRECHER, JUDGE

* * * * * *

Robert Angelle                          Counsel for Plaintiff-Appellant
Metairie, Louisiana                     Linda Ballex, as Tutrix of the minor
                                        child, Verna Maria Ballex

F. Pierre Livaudais                     Counsel for Defendants-Appellees
Mandeville, Louisiana                   Eugene Ballex and Kelly Sparacio
                                        Ballex

* * * * * *

BEFORE:  McDONALD, THERIOT, AND CHUTZ, JJ.

Disposition: AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

**CHUTZ, J.**

Plaintiff-appellant, Linda Ballex in her capacity as tutrix for her minor child Verna "Vernie" Maria Ballex, appeals the trial court's judgment, dismissing her claims against defendants-appellants, Eugene "Gene" Ballex and Kelly Sparacio Ballex, for a declaration that the donations of certain checks drawn on the bank account of decedent, Chetley Michael Ballex, are null and without effect and seeking return of the amounts of the checks. We affirm in part and reverse and render in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Chetley Ballex died on October 10, 2011. His twin brother, Gene, subsequently filed a petition to probate Chetley's notarial testament. In the will, Chetley left some movable property to Gene and appointed Gene as the executor of his estate. The will left the remaining property to a trust to be administered by Gene for the benefit of Chetley's minor daughter, Vernie. Thereafter, the court ordered the execution of the will and confirmed Gene as the testamentary executor in the succession proceedings. Linda, Chetley's ex-wife and Vernie's mother, filed a petition to annul the will in the succession proceeding, individually and on behalf of Vernie. *In re Succession of Ballex*, 2012-1571 (La. App. 1st Cir. 7/31/13), 2013 WL 3961203, at *1. This court reversed the trial court's determination that the will's attestation clause was valid and nullified the will.[1] *In re Succession of Ballex*, 2013 WL 3961203, at *6.

Linda and Gene subsequently entered into a compromise agreement whereby Linda, as tutrix of Vernie's estate, agreed to qualify as administratrix of Chetley's

---

[1] Thus, in this appeal, it is undisputed that Chetley's succession was intestate. See La. C.C. art. 880 ("In the absence of valid testamentary disposition, the undisposed property of the deceased devolves by operation of law in favor of [among others] his descendants."). See also La. C.C. art. 888 ("Descendants succeed to the property of their ascendants."). *In re Succession of Ballex*, 2015-1647 (La. App. 1st Cir. 4/15/16), 2016 WL 1535070, at *2.

2

succession and to transfer certain movable property of the succession to Gene in return for which Gene agreed to accept this court's decision nullifying Chetley's will. Linda was duly appointed administratrix of Chetley's succession by a consent judgment signed on September 6, 2013.

On October 10, 2014, in her capacity as administratrix, Linda filed a petition naming Kelly and Gene as defendants.[2] Linda claimed that two checks, in the amounts of $565.00 and $60,000.00 respectively, were drawn on Chetley's J.P. Morgan Chase Bank, NA account and purportedly signed by Chetley on October 8, 2011, two days before his death. Linda alleged that Kelly and Gene negotiated the two checks on October 12, 2011, and she sought the return of the amounts of each check to the succession, claiming that Chetley did not sign the checks, lacked capacity, or was under undue influence at the time. Linda also averred that as alleged donations, the transactions were absolute nullities since they were neither made by authentic act nor timely accepted. She requested a declaration that the alleged donations were absolute nullities and without legal effect as well as the return of the proceeds from the checks.

Kelly answered the lawsuit, noting that the amount of $565.00 was reimbursement for an iPad she had purchased on behalf of Chetley for Vernie. In a third party demand, Kelly asserted entitlement to return of the iPad if she were ordered to pay the sum of $565.00 to the succession. Gene also answered the lawsuit, generally denying Linda's claims and asserting the validity of a donation of $60,000.00 by a check to him from Chetley.

Linda was subsequently substituted as the proper party plaintiff in her capacity as the tutrix of Vernie. It is undisputed that Vernie became the owner of

---

[2] After Chetley's death, Kelly and Gene were married in 2012.

3

the succession's claims against Gene and Kelly by a judgment of possession signed on July 11, 2016.

After a bench trial, the trial court signed a judgment dismissing all of Linda's claims. This appeal followed.

**DISCUSSION**

Initially, we note that the trial court issued two judgments. The first judgment, signed on March 22, 2019, was "rendered in favor of Defendants." The second judgment, signed on April 3, 2019, dismissed the claim against Kelly "pursuant to representations of [Linda's] counsel," rendered judgment in favor of Gene, and dismissed Linda's petition. Linda filed a single petition for a devolutive appeal of both judgments on April 29, 2019, which the trial court granted.

On appeal, Linda initially suggests that the March 22, 2019 judgment was a final judgment and, therefore, the trial court's issuance of the April 3, 2019 judgment constituted an impermissible substantive amendment of the March 22, 2019 judgment since it was not modified pursuant to either a motion for new trial, after a hearing, with the consent of the parties, or after a certification that the amended judgment was provided to all parties at least five days before the amendment and that no opposition had been received. See La. C.C.P. arts. 1951, 1972 & 1973.

This court has consistently held that the failure to name the defendant against whom the judgment is rendered in a case with multiple defendants makes the judgment fatally defective, because one cannot discern from the face of the judgment against whom it may be enforced. See *Jenkins v. Recovery Tech. Investors*, 2002-1788 (La. App. 1st Cir. 6/27/03), 858 So.2d 598, 600. Although the March 22, 2019 judgment broadly "rendered [judgment] in favor of Defendants," all the parties, in this matter -- Linda, the sole plaintiff, and Kelly and

4

Gene, the only defendants -- were identified in the caption of the March 22, 2019 judgment and specifically referenced in the portion of the March 22, 2019 judgment that set forth the parties' legal counsel. See *Cross v. Timber Trails Apartments*, 2006-1037 (La. App. 3d Cir. 2/7/07), 949 So.2d 616 (amendment of a judgment was permissible as a change in the phraseology from a reference to the defendants collectively to the specific identification of each defendant referenced).

We find it unnecessary to discuss the propriety of the trial court's modification of its judgment prior to the grant of Linda's appeal and pretermit such a discussion. It is well settled that appeals are favored in the law and should be maintained unless a legal ground for dismissal is clearly shown. *Edgefield v. Audubon Nature Institute, Inc.*, 2018-1782 (La. 1/18/19), 261 So.3d 776 (per curiam). Any issues related to the articulation of the identification of the defendants and the basis for relief as to the dismissal of Kelly in the April 3, 2019 judgment were created by the trial court amending the March 22, 2019 judgment on its own motion. Linda timely sought appellate review following the trial court's issuance of the two judgments. As such, even if a defect were to exist, it would not be attributable to Linda. See La. C.C.P. art. 2161 ("An appeal shall not be dismissed because of any other irregularity, error or defect unless it is imputable to the appellant."). Therefore, the appeal and all the issues raised in Linda's brief are properly before us. See *Kelly McHugh and Assocs., Inc. v. RPDE Dev., LLC*, 2019-0709 (La. App. 1st Cir. 3/5/20), --- So.3d ----, 2020 WL 1082441, at *1-2.

Turning to Linda's substantive claims, we note that at trial, the undisputed evidence showed that on October 8, 2011, at Chetley's request, Kelly filled in two checks from his checkbook. Check #3223 was made payable to Gene in the amount of $60,000.00. Check #3224 was made payable to Kelly in the amount of $565.00. Kelly testified she was alone with Chetley, did not know why he asked

her to fill out the checks, and that he was able to sign them without any apparent effort. At the time the checks were written and signed, Gene had left Chetley's house to run errands. When he returned, Kelly gave him the check for $60,000.00 that Chetley had her make out for Gene. Kelly deposited both checks on October 12, 2011, two days after Chetley died.[3]

On appeal, Linda acknowledges that the trial court's findings that Chetley signed the two checks, had capacity, and was not under any undue influence at the time of signing are not manifestly erroneous. Thus, she does not challenge these factual conclusions.[4] And at oral argument before this court, Linda conceded that the dismissal of her claim for reimbursement as set forth in check #3224 made out to Kelly in the amount of $565.00 for the purchase of the iPad for Vernie as directed by Chetley was not a donation and that she was not seeking its return.[5] Accordingly, the trial court correctly dismissed Linda's claims against Kelly.

Instead, Linda asserts that the trial court committed legal error in implicitly finding that Gene timely accepted the donation of $60,000.00 because Chetley died before Gene negotiated the check. Without a proper acceptance, Linda contends the donation was a nullity. We agree.

Property can neither be acquired nor disposed of gratuitously except by donations inter vivos or mortis causa, made in one of the forms established by law. See La. C.C. art. 1467. A donation inter vivos is a contract by which a person,

---

[3] Kelly testified that Chetley's death on October 10, 2011 was a federal holiday, and that the bank was closed.

[4] See *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993) (A reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.).

[5] In addition to failing to assert any substantive arguments challenging the dismissal of her claim against Kelly in her appeal, during trial, Linda testified that she was not asking Kelly to return the money she provided for the purchase of Vernie's iPad, and her attorney stated to the trial court that Linda was "not trying to get the [$565.00] back because the child did get the iPad."

6

called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it. La. C.C. art. 1468. A donation inter vivos shall be made by authentic act under the penalty of absolute nullity, unless otherwise expressly permitted by law. La. C.C. art. 1541.

A donation inter vivos is without effect until it is accepted by the donee. The acceptance shall be made during the lifetime of the donor. The acceptance of a donation may be made in the act of donation or subsequently in writing. When the donee is put into corporeal possession of a movable by the donor, possession by the donee also constitutes acceptance of the donation. La. C.C. art. 1544. The donation or the acceptance of a donation of an incorporeal movable of the kind that is evidenced by an instrument or other writing, and that is transferable by endorsement or delivery, may be made by authentic act or by compliance with the requirements otherwise applicable to the transfer of that particular kind of incorporeal movable. La. C.C. art. 1550.

Under Louisiana property law, a check is classified as an incorporeal movable. See La. C.C. art. 473 ("Rights, obligations, and actions that apply to a movable thing are incorporeal movables."). See *In re Succession of Franklin*, 42,496 (La. App. 2d Cir. 10/17/07), 968 So.2d 811, 814; La. C.C. art. 1550, 2008 Revision Comment (c).

Donations inter vivos of instruments shall be governed by the provisions of the Louisiana Uniform Commercial Code -- Negotiable Instruments laws notwithstanding any other provision of the Louisiana Civil Code or of any other law of this state, relative to the form of donations inter vivos, to the contrary. See La. R.S. 10:3-203(e). Thus, while the Louisiana Uniform Commercial Code-- Negotiable Instruments laws control as to the requisite *form*, the substantive codal provisions relative to the *validity* of donations inter vivos remain applicable. *In re*

7

*Succession of Wagner*, 2008-0212 (La. App. 1st Cir. 8/8/08), 993 So.2d 709, 714 n.1 (overruled on other grounds by *Advanced Leveling & Concrete Sols. v. Lathan Co., Inc.*, 2017-1250 (La. App. 1st Cir. 12/20/18), 268 So.3d 1044, 1047), citing *Succession of Jackson*, 537 So.2d 736, 740 n.6 (La. App. 1st Cir. 1988), writ denied, 541 So.2d 857 (La. 1989); *Succession of Jones*, 505 So.2d 841, 844-45 (La. App. 2d Cir. 1987).

The donation inter vivos of a check is effective without any formality beyond the negotiation of same. *In re Succession of Wagner*, 993 So.2d at 714 n.1, citing on La. R.S. 10:3-201-207; *Succession of Jackson*, 537 So.2d at 740 n.6. "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder. La. R.S. 10:3-201(a). An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. La. R.S. 10:3-203(a).

Assuming donative intent, as we must in light of the trial court's factual findings, under La. C.C. art. 1550, the attempted donation of $60,000.00 by Chetley through the use of his personal check did not constitute a completed gift unless and until the check was negotiated, i.e., possession of the $60,000.00 in cash has been transferred from Chetley to Gene. An issuer is a "maker or drawer of an instrument." La. R.S. 10:3-105(c). Here, Chetley gave his personal check to Gene intending to make to him a donation of $60,000.00 in cash from Chetley's checking account. But because Chetley is the "issuer" of his own personal checks, the $60,000.00 in cash was not transferred from "a person other than the issuer." Therefore, La. R.S.10:3-203(a) does not apply to this situation. See La. C.C. art. 1550, 2008 Revision Comment (c). Under the provisions of La. C.C. art. 1544, possession of the movable property, i.e., negotiation of the check for $60,000.00

8

into cash did not occur until after Chetley's death so as to constitute acceptance of the donation by way of possession by Gene.

Thus, there is an important distinction between the donation of a check itself, which is an incorporeal movable, and the donation of the money or funds represented by the check. Since Chetley intended to make a gift to Gene of cash by writing his personal check to Gene, but Gene did not cash the check before Chetley's death, there was not a completed gift of the funds in the bank account. See La. C.C. art. 1550, 2008 Revision Comment (c). Accordingly, the trial court erred in its implicit conclusion that Gene timely accepted the donation of $60,000.00, because Chetley died before Gene had possession of the $60,000.00 in cash through negotiation of the check.[6]

In accordance with the relief sought in Linda's petition, we render judgment, declaring the donation inter vivos represented by check # 3223 in the amount of $60,000.00 drawn on Chetley's J.P. Morgan Chase Bank, NA, account is absolutely null and without effect. See La. C.C. art. 1541 & 1544. See also La. C.C.P. art. 1871-1883 (setting forth the procedure and requirements for declaratory relief). Additionally, we render judgment directing Gene to pay to Linda, as tutrix of Vernie's estate, the sum of $60,000.00. See La. C.C. art. 2033 ("An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made.").

---

[6] At oral argument, Kelly and Gene contended that the issue of the timeliness of the negotiation of the $60,000.00 check was not before the trial court, suggesting that the matter should be remanded for a determination at the trial court. In this bench trial, at which neither party presented either an opening or closing argument, facts in support of the issue of the timeliness of the negotiation of the $60,000.00 check were set forth in Linda's initial petition, to which Gene specifically responded in his answer, and the matters were specifically identified in the parties' detailed pretrial order. Therefore, this assertion is without merit.

9

## DECREE

For these reasons, we affirm the trial court's judgment insofar as it dismisses Linda's claims against Kelly. We reverse the judgment insofar as it dismisses Linda's claims against Gene and render judgment, declaring the donation of $60,000.00 to Gene from Chetley is an absolute nullity and without effect. Gene is ordered to pay to Linda, as tutrix of Vernie, the sum of $60,000.00. Appeal costs are assessed against Eugene "Gene" Ballex.

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2019 CA 0271

LINDA ARANGUREN BALLEX, AS THE TUTRIX
OF HER MINOR CHILD, VERNA MARIA BALLEX

VERSUS

EUGENE BALLEX AND KELLY SPARACIO BALLEX

McDONALD, J., concurring.

I concur with the majority opinion because I agree with the result reached. I disagree, however, with the majority's analysis and treatment of the two separate judgments the district court rendered in this case.

I think the second judgment contains an impermissible substantive change to the first judgment, which requires that we set aside the second judgment; reinstate the first judgment; address its validity; and, then reverse that first judgment. *For example, see Matter of Succession of Buhler,* 17-0049 (La. App. 1 Cir. 2/22/18), 243 So.3d 39, 44-45. To me, the fact that it was the trial court judge who drafted the second judgment on his own motion, rather than Linda Ballex, does not cure the second judgment's invalidity or make it appealable.